

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-7-2004

# Lialko v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3041

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Lialko v. Atty Gen USA" (2004). *2004 Decisions.* Paper 245.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/245

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-3041

———

GALINA LIALKO

Petitioner

v.

JOHN ASHCROFT, ATTORNEY GENERAL OF THE UNITED STATES

Respondent

———

Petition for Review of an Order of
the Board of Immigration Appeals
(Agency No. A70 901 676)

———

Submitted Under Third Circuit L.A.R. 34.1(a)
September 24, 2004

Before: McKee , Aldisert and Greenberg, Circuit Judges.

(Filed: October 7, 2004)

———

OPINION OF THE COURT

———

1

ALDISERT, Circuit Judge.

Petitioner Galina Lialko, a citizen of the Ukraine, seeks review of an order of the Board of Immigration Appeals ("BIA") which affirmed the Immigration Judge's ("IJ's") denial of her request for asylum and withholding of deportation. We must determine whether substantial evidence supports the BIA's determination. The BIA relied on the IJ's finding that Lialko was not credible and the IJ's identification of significant omissions, contradictions and implausibilities in Lialko's testimony and between her testimony and her asylum application.

If we find that the credibility determination was not supported by substantial evidence we are required to remand the proceedings to the BIA for further consideration of her eligibility for asylum and withholding of deportation. INS v. Ventura, 537 U.S. 12 (2002).

Lialko entered the United States on April 7, 1990, as a visitor for pleasure with authorization to remain until May 7, 1992. She overstayed her authorization and on November 20, 1996 the former INS issued an order to show cause, charging her with being subject to deportation. The IJ denied her application for asylum and withholding, as well as her request for voluntary departure and ordered her deported to the Ukraine.

Because we write only for the parties who are familiar with the facts and the entire administrative proceedings, we will discuss only the legal issue presented.

2

I.

Adverse credibility findings are reviewed under the highly deferential substantial evidence standard. <u>Mulanga v. Ashcroft</u> 349 F.3d 123, 131 (3d Cir. 2003). Substantial evidence is lacking only in those cases where the asylum applicant can establish that evidence of record was "so compelling that no reasonable fact finder could [have] fail[ed] to find" in her favor. <u>INS v. Elias Zacarias</u>, 502 U.S. 478, 481 n.1 (1992).

An asylum applicant bears the burden of proving eligibility for asylum. 8 C.F.R. § 1208.13(a) (2003); <u>see also</u> <u>Gao</u>, 299 F.3d at 272. In order for an asylum applicant to demonstrate that she is a refugee, the applicant must present specific facts demonstrating that she suffered past persecution or has a well-founded fear of future persecution because of one of the categories protected by the statute. 8 U.S.C. § 1101(a)(42)(a); <u>see also</u> <u>Elias Zacarias</u>, 502 U.S. at 482-483.

To determine whether an applicant is eligible for asylum, the IJ must consider the applicant's subjective mental state along with the background of circumstances prevailing in the applicant's home country. Generally, extrinsic evidence of the conditions in the applicant's country is presented. This evidence can be used to assess the objective reasonableness of the applicant's subjective fears and to determine whether the applicant's testimony is reliable.

Here, there was substantial evidence to support the BIA's determination. The BIA affirmed the IJ's denial of Lialko's request for asylum and withholding of deportation.

3

The IJ determined that Lialko's entire testimony, particularly the rape, was "totally incredible, totally irrational, and totally implausible." (R. at 141.) Alternatively, the IJ found that Lialko had failed to establish that she had suffered from past persecution or that there was any likelihood that she would suffer future persecution.

The IJ primarily found Lialko's testimony "incredible, irrational and implausible" because of her failure to mention an alleged rape that formed the heart of her 1999 application for asylum. Lialko completed an application for asylum in 1993, accompanied by an affidavit that did not mention an alleged rape in 1989. Instead, Lialko testified that she was beaten severely by three members of the Rukh, an anti-Semitic organization, and was bedridden for more than a week. She identified her nemesis as a "guy" who was a member of the Rukh organization. Before the IJ she prepared another affidavit that disclosed that one of the alleged rapists was her boss, Sasha. She stated that she had not mentioned the alleged rape earlier because she was emotionally scarred. This contradicts Lialko's earlier testimony that she had not mentioned the rape because of alleged threats from Sasha.

The IJ concluded that the belated revelation of this important, and if true memorable, information, casts fatal doubts on her testimony. These allegations comprised the "heart" of Lialko's asylum claim. Moreover, the IJ noted that Lialko's purported corroborating evidence, the hospital report, contained no report of a rape, and instead stated that Lialko was beaten up near her apartment. Similarly, the police report

4

filed after the assault did not mention a rape.

The IJ also found that Lialko had failed to establish that she had suffered from past persecution or that there was any likelihood that she would suffer future persecution. Lialko asserted that she had been and will be persecuted in the Ukraine on the basis of her Jewish background. She stated that she was identified as Jewish on her internal passport, but was unable to produce the passport as it had allegedly been taken away from her. She presented a birth certificate that set forth nationalities of her mother (Jewish) and father (Ukranian) but did not identify Lialko's own nationality.

Lialko testified that she had been persecuted for her Jewish background both at school and at work. She stated that she got lower grades in school because she was Jewish, although she provided no evidence to support this. Lialko studied at the technical facility for four years, received a degree as a radio engineer and was thereafter assigned to a government owned plant that made parts for bombs and tanks.

Lialko testified that on her first day at work she was approached by her boss, Sasha, who told her he would like her to register with the union, which he said was mandatory for all employees, and that he was a member of the Rukh. Lialko testified that she told Sasha "I am half Jew" and have "no desire to participate in any organization." The IJ questioned her credibility, stating that "[i]t is implausible to the Court that the respondent would offer the information that she was a Jew to an individual, who, first of all, was her boss, and second of all, identified himself as a member of the Rukh, this anti-

5

Semite organization." (R. at 149.) Lialko testified that after she identified herself as Jewish, people began to mistreat her and called her anti-Semitic names.

Lialko further testified that Sasha invited her to a Rukh meeting which Lialko attended. The IJ found it implausible that "Sasha, an anti-Jew, obviously, by his membership in the Rukh, would want the respondent, a Jew, to join the group and join the meeting, and that the respondent, knowing what the Rukh was all about, would go there in the first place." (R. at 151.)

The above inconsistencies, *inter alia*, led the IJ to seriously question Lialko's credibility. The IJ believed Lialko "intentionally tried to deceive the Court." (Id. at 159.) There is substantial evidence to support the IJ's determination and the BIA's affirmation of the IJ's determination.

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. Accordingly, the petition for review of an order of the BIA will be denied.

———