

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-12-2006

# Halim v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2318

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Halim v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1759.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1759

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-2318

_____

HERMANTO HALIM,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A78-602-265)
Immigration Judge: Donald Vincent Ferlise

_____

Submitted Under Third Circuit LAR 34.1(a)
December 5, 2005

Before:  RENDELL FISHER and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>.

(Filed: January 12, 2006)

_____

OPINION OF THE COURT

_____

RENDELL, *Circuit Judge.*

Hermanto Halim, a native and citizen of Indonesia, petitions for review of the Board of Immigration Appeals ("BIA")'s April 13, 2004 decision affirming the denial of Halim's application for asylum, withholding of removal pursuant to 8 U.S.C. § 1231(b)(3), protection under the United Nations Convention Against Torture ("CAT") and voluntary departure.

Halim challenges the BIA's denial of voluntary departure and withholding of removal. We lack jurisdiction to consider the denial of voluntary departure, *see* 8 U.S.C. § 1252(a)(2)(B)(i), but may review the BIA's decision to deny withholding of removal under 8 U.S.C. § 1252(a)(1). We will grant the petition for review.

Halim claims that, as a Chinese Christian, he has suffered ethnic and religious persecution in Indonesia that justifies withholding of removal. *See* 8 C.F.R. § 1208.16(b). Halim was a supervisor at a saw mill in Indonesia from 1995 to 1998. He asserts that the native Indonesian employees that he supervised there did not like him because he was Chinese and that, after he fired an Indonesian employee that he caught stealing, the former employee and others attacked and extorted money from him. In May of 1998, the saw mill and Halim's house were burned down in countrywide anti-Chinese riots. After the 1998 riots, Halim came to the United States for several months. He returned to Indonesia in January of 1999, where he set up a storefront business designing and reproducing car alarms. In October of 1999, Halim and his store were targeted in a wave of anti-Christian

2

and anti-Chinese violence that erupted in the runup to a national election. Halim returned to the United States in November of 1999, and filed an application for asylum on November 24, 2000. After his application was denied, Halim was served with a Notice to Appear and placed in removal proceedings.

At a hearing before Immigration Judge ("IJ") Donald Ferlise, Halim testified about the incidents at the saw mill and the 1998 riots. Oddly, the subject of the 1999 riots, which apparently prompted Halim's return to the United States, never came up. Although the affidavit that Halim attached to his application for asylum and withholding of removal, which the IJ entered into the record as Exhibit 3, described Halim's trip to the United States in 1999, his return to Indonesia and the subsequent riots in detail, Halim's lawyer failed to elicit testimony about any of these events. The government's cross examination explored inconsistencies between Halim's testimony and his affidavit, but it never mentioned the 1999 riots.

The IJ denied Halim's application for withholding of removal because he determined that Halim's testimony was not credible and, in the alternative, that Halim had failed to satisfy his burden of proving past persecution. The IJ's alternative finding was based in part on his observation that Halim chose to return to Indonesia in 1999 despite his alleged persecution in the 1998 riots. According to the IJ, "[t]his sends a loud message to the Court that either the testimony was completely fabricated, or that the situation is nowhere near as bad as the respondent would have the Court to believe, otherwise he

would not have returned to his native country."  The BIA adopted and affirmed the decision of the IJ in accordance with its holding in *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994), because it agreed with the IJ "that the respondent failed to establish a clear probability of persecution in light of the fact that he returned to Indonesia [in January 1999] and did not testify to any incidents that happened while he was there before returning to the United States [in November 1999]."

We review the BIA's findings of fact for "substantial evidence," which requires us to treat such findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).  "Thus, the question whether an agency determination is supported by substantial evidence is the same as the question whether a reasonable fact finder could make such a determination based upon the administrative record."  *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003) (en banc).

The BIA concluded that Halim had failed to meet his burden of establishing persecution solely because it determined, as a matter of fact, that Halim had not presented any evidence of ethnic or religious persecution that occurred after he returned to Indonesia in 1999.  This finding is wholly unsupported by the record.  Although Halim did not *testify* about the events that prompted his return to the United States, his affidavit provided the following account of the 1999 riots:

> [The mob was] yelling anti Chinese and Christian
> slogan such as "kill the Chinese . . . kill the dog . . . kill
> the kafir . . . etc" . . . .  Suddenly a group of ten people
> were already inside of my store.  They were holding

4

> steel bars and wooden sticks. They saw a Cross
> hanging on the wall (I always hang a Cross on the wall).
> They grabbed the Cross and broke it into two pieces.
> Then they were scattering apart and took every valuable
> thing in my store. I was trying to stop them, but some
> of them were holding me from behind. They smashed
> the window and went to my small office. They
> smashed everything in my office and took whatever
> they like. I heard them screaming for joy, destroying
> anything they like, then they would shout some Arabic
> verses, which I didn't understand the meaning. After
> about twenty minutes, the mobs went to my next door, a
> grocery store belonged to an old Chinese couple.
> Before they left, suddenly they hit my stomach by using
> the steel bar and then they punched my face several
> times. It was so hurt that I fainted in a second.

The IJ, the BIA and even Halim's own lawyer simply ignored this part of the record. Halim's allegations, while perhaps insufficient to establish a clear probability of past or future persecution, *see Lie v. Ashcroft*, 396 F.3d 530, 536 (3d Cir. 2005), at least offer some evidence that Halim suffered ethnic and religious persecution after he returned to Indonesia in 1999. No reasonable fact finder could conclude otherwise.

Because the factual finding that formed the basis for the BIA's decision was unsupported by substantial evidence, we will GRANT Halim's petition for review. We express no opinion, however, as to whether the allegations in Halim's affidavit support a finding of past persecution or likelihood of future persecution that qualifies him for withholding of removal under 8 U.S.C. § 1231(b)(3). We will VACATE the BIA's

5

decision and leave that determination for the BIA to make in the first instance on remand.

*See INS v. Ventura*, 527 U.S. 12, 16-17 (2002).