**Pranvera CELAJ, also known as Bore Keva, Petitioner,**

v.

**Alberto R. GONZALES,[1] Respondent.**

**No. 04–2382–ag.**

United States Court of Appeals, Second Circuit.

June 8, 2006.

1.  Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto Gonzales is automatically substituted for former Attorney General John Ashcroft.

---

Thomas V. Massucci, New York, NY, for Petitioner.

Present: RICHARD J. CARDAMONE, DENNIS JACOBS and RICHARD C. WESLEY, Circuit Judges.

### SUMMARY ORDER

Pranvera Celaj, a native and citizen of Albania, petitions for review of the BIA's decision summarily affirming the decision of the immigration judge ("IJ"). The IJ made a positive credibility determination but denied Celaj's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We assume the parties' familiarity with the underlying facts and procedural history.

Celaj's testimony and the State Department Country Report ("Country Report") indicate that abduction and trafficking of young women for the purpose of prostitution is common in Albania. The IJ, however, denied Celaj relief based in part on the IJ's finding that Celaj could not establish a particular social group of young Albanian women. The IJ concluded that Celaj's asserted social group did not constitute a particular social group under INA § 101(a)(42)(A) because "[i]t is possible to either broaden or narrow that group to any degree .... [and because] anyone could define a similar group in virtually any country in the world." The BIA summarily affirmed the IJ's decision. In so doing, the BIA did not comment on Celaj's asserted particular social group.

Since the BIA's summary affirmance, however, both the Supreme Court and this Court have issued decisions indicating that under certain circumstances we are required to remand an issue to the BIA if the BIA has not spoken on the issue. In *Gonzales v. Thomas*, — U.S. —, 126 S.Ct. 1613, 164 L.Ed.2d 358 (2006) (per curiam), the Supreme Court addressed whether a court of appeals may consider "in the first instance" whether an asylum applicant falls within the statutory term "particular social group," where the BIA has not formally considered that question. *Id.* at 1615. Thomas claimed asylum based in part on a fear of persecution for being related to " 'Boss Ronnie,' a white South African who allegedly held racist views and mistreated black workers at the company at which he was a foreman." *Id.* at 1613. Neither the IJ nor the BIA directly addressed Thomas's particular social group claim. *See id.* at 1613–14. Nevertheless, the Ninth Circuit, reviewing the case on a petition for rehearing en banc, concluded that "a family may constitute a social group for the purposes of

refugee statutes." *Thomas v. Gonzales,* 409 F.3d 1177, 1187 (9th Cir.2005) (en banc).

The Supreme Court, in a unanimous decision, vacated the judgment of the Ninth Circuit and remanded the case for further proceedings. *See Thomas,* 126 S.Ct. at 1615. The Court held that the Ninth Circuit had usurped the BIA's administrative role because the BIA had not yet considered whether members of "Boss Ronnie's family present the kind of 'kinship ties' that constitute a particular social group." *Thomas,* 126 S.Ct. at 1615. The Court noted: " 'A court of appeals "is generally not empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." ' " *Id.* (quoting *INS v. Orlando Ventura,* 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam) (in turn quoting *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985))).

Subsequently, in *Ucelo–Gomez v. Gonzales,* we addressed another asylum claim based on an asserted particular social group. No. 448 F.3d 180 (2d Cir.2006) (per curiam). Specifically, the petitioners in *Ucelo–Gomez* claimed relief based on their membership "in a social group composed of affluent Guatemalans, who suffer persecution fueled by class rivalry in an impoverished society." *Id.* at 182. The IJ denied petitioners' claims for relief. The BIA summarily affirmed the IJ's decision.

Relying on *Gonzales v. Thomas* and *INS v. Ventura,* we vacated the BIA's decision and held that a remand to the BIA was necessary "to determine whether the facts as found support a determination that the aforementioned group of persons constitutes a social group within the meaning of the INA." *Ucelo–Gomez,* 448 F.3d at 182. We also indicated that "the agency interpretation required by *Thomas* and *Ventu-*

*ra* is 'in the first instance' a particularized interpretation by the BIA," *id.* at 186, and that "[i]nterpretations by individual IJs are insufficient to constitute the agency's interpretations," *id.* We noted that, "it is well-settled ... that the BIA's summary affirmance of an IJ's decision does *not* constitute an official agency interpretation." *Id.* at 186 (citing *Shi Liang Lin v. U.S. Dep't of Justice,* 416 F.3d 184, 189–90 (2d Cir.2005)). We thus concluded that "interpretations by individuals IJs, even if summarily affirmed by the BIA, are not sufficient to constitute the agency's interpretation." *Id.*

■ *Thomas* and *Ucelo–Gomez* control the instant case. We are not entitled to decide "in the first instance" the issue of whether Celaj's social group constitutes a particular social group within the meaning of the INA. Instead, we must remand this issue to the BIA. In the instant case, the IJ considered but denied Celaj's claim of persecution on the basis of her asserted particular social group. The BIA, however, affirmed the IJ's decision in a summary opinion; so it is unclear whether the BIA ruled that Celaj's social group is no social group, or that Celaj is not a member of the claimed group, or that she suffered no persecution on that account. The BIA thus did not consider whether Celaj's asserted social group constitutes a particular social group under the INA. *Thomas* and *Ucelo–Gomez* make clear, however, that the BIA in the first instance must address the issue of whether an asserted social group constitutes a particular social group under the meaning of the statute. *See Thomas,* 126 S.Ct. at 1615; *Ucelo–Gomez,* 448 F.3d at 186–87. Moreover, the BIA's summary affirmance of the IJ's decision is "not sufficient to constitute the agency's interpretation." *Ucelo–Gomez,* 448 F.3d at 187. Because the BIA has not addressed the issue of whether young Albanian wom-

en in Celaj's position (i.e., young Albanian women who fear being sold into prostitution) constitute a particular social group, we must remand this issue to the BIA.

■ In addition, the IJ's finding that Celaj failed to establish that she would be singled out for persecution is not supported by substantial evidence. The IJ based this conclusion on his finding that Celaj failed to prove that the police were unable or unwilling to protect her because she did not seek their assistance after the attempted kidnaping. Although the IJ noted that the Country Report indicates that the "police themselves are sometimes involved in such activities as trafficking women for prostitution," the IJ reasoned that Celaj could have approached the police to ask for their assistance because she had the support of her fellow villagers.

However, the Country Report does not state that the police were "sometimes" involved in trafficking of persons but rather that they "were *often* directly or indirectly involved" (emphasis added). Celaj also testified—in testimony the IJ found credible—that she and her family could not turn to the police for protection because the police would not "protect ... families with an anticommunist background" and "for the simple reason that [her] father was a member of the Democratic Party, and so he feared [that] confess[ing] the incident to the police [would] mak[e] the matter worse." Moreover, although other villagers assisted Celaj during her attempted abduction, such actions do not support the IJ's conjecture that these villagers would thus have been able or willing to assist Celaj by forcing the police to protect her. Overall, therefore, substantial evidence does not support the IJ's finding that Celaj failed to establish that she would be singled out for persecution. Finally, we find that the IJ's CAT analysis is also flawed, as it appears to be based on the same erroneous reasoning.

Accordingly, Celaj's petition for review is GRANTED, the BIA's decision is VACATED, and the case is REMANDED for further proceedings consistent with this order. Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DENIED. Any pending request for oral arguments is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2) and Second Circuit Local Rule 34(d)(1).