**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0064n.06
Filed: January 26, 2007

**No. 05-3939**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| XIN MAO WU, | ) | |
| | ) | ON REVIEW FROM THE |
| *Petitioner*, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| v. | ) | |
| | ) | |
| ALBERTO GONZALES, Attorney General, | ) | |
| | ) | |
| *Respondent*. | ) | |

O R D E R

**BEFORE:** **KENNEDY, COLE, and COOK, Circuit Judges.**

**PER CURIAM**. Xin Mao Wu, a native and citizen of the People's Republic of China, unlawfully entered the United States in August 1995. In February 1996, the Immigration and Naturalization Service ("INS")[1] arrested Wu while he was working at a restaurant in Cleveland, Ohio; charged him as an alien who entered the United States without inspection, in violation of section 241(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(B); and commenced deportation proceedings against him. Wu failed to appear and was ordered deported in absentia on October 17, 1996. Wu never left the United States.

Over seven years later, Wu filed a motion with the immigration court to reopen his removal

---

[1]The Homeland Security Act of 2002 abolished the INS and transferred its functions to the Department of Homeland Security. Pub. L. No. 107-296, 116 Stat. 2135 (2002).

proceedings claiming, among other things, that he was now eligible to apply for an adjustment of status based on an employment-sponsored visa petition. This motion was denied as untimely, and we affirmed. *Wu v. Gonzales*, No. 05-3062 (6th Cir. Oct. 24, 2005) (unpublished order).

Despite Wu's unlawful immigration status, Wu began laying roots in the United States. Just months after filing his first motion to reopen, Wu married Xiu Ying Chen, another Chinese national also present unlawfully in the United States. They had their first child in June 2003.

Still in the United States two years after the denial of his first motion to reopen, Wu filed a second motion to reopen with the Board of Immigration Appeals ("BIA"), this time seeking asylum. Wu claimed he was now eligible to apply for asylum based on changed personal circumstances, specifically that he and his wife now had a child and were expecting a second.[2] In his application, Wu asserted that if returned to China, because he had two children, either he or his wife would be forcibly sterilized by the Chinese government in accordance with China's coercive population-control policy. The BIA denied Wu's second motion to reopen, finding that the motion was (1) untimely because it was filed well after ninety days following the date of entry of the final removal order, and (2) numerically barred because an alien is allowed, absent circumstances not present here, only one motion to reopen. *See* 8 U.S.C. §§ 1229a(c)(7)(A), (C); 8 C.F.R. §1003.2(c)(2).

Wu now seeks review of the BIA's denial, arguing that the births of his children in the United States constitute changed circumstances excepting him from the time and numerical limitations for filing a motion to reopen. Wu concedes that the births of his children amount to changed personal

---

[2]The second child was due on October 17, 2005. The record is unclear as to whether that child was born.

circumstances only and acknowledges that under the 8 U.S.C. § 1229a(c)(7)(C)(ii) (and its accompanying regulation, 8 C.F.R § 1003.2(c)(3)) one must allege changed country conditions to avoid the time and numerical limitations for filing a motion to reopen. Instead, Wu makes the novel argument that 8 U.S.C. § 1229a (and its accompanying regulation, 8 C.F.R § 1003.2) conflicts with 8 U.S.C. § 1158 (and its accompanying regulation, 8 C.F.R. § 1208.4), which provides the Attorney General with authority to grant asylum. Wu maintains that, under 8 U.S.C. § 1158, Congress intended for aliens with a well-founded fear of persecution if returned to their native country to have the opportunity to apply for asylum regardless of whether their asylum application was untimely or successive, so long as they alleged *either changed country conditions or changed personal circumstances*. *See* 8 U.S.C. § 1158(a)(2)(D) ("An application for asylum . . . may be considered, notwithstanding [its successiveness or untimeliness], if the alien demonstrates . . . the existence of changed circumstances which materially affect the applicant's eligibility of asylum . . . ."); 8 C.F.R. § 1208.4(a)(4)("changed circumstances . . . include . . . [c]hanges in conditions in the applicant's country of nationality ["changed country conditions"] . . . [or] [c]hanges in the applicant's circumstances that materially affect the applicant's eligibility for asylum ["changed personal circumstances"]"). We have not identified any court that has addressed this argument or a variant.

Although Wu presented this argument in his second motion to reopen, it was not addressed in the BIA's denial order. The BIA's two-paragraph denial simply stated that the births of Wu's children in the United States—what amount to a change in personal circumstances—did not constitute a change in circumstances arising in the country of nationality, which would create an exception to the time and numerical limits for filing a motion to reopen under 8 U.S.C. §

1229a(c)(7)(C)(ii) and 8 C.F.R. § 1003.2(c)(3)(ii). Thus, the BIA did not address the nature of the interaction between the broader exception to the time and numerical limits described in 8 U.S.C. § 1158(a)(2)(D) and the narrower exception described in 8 U.S.C. § 1229a(c)(7)(C)(ii). In other words, the BIA did not dispose of Wu's nonfrivolous argument that 8 U.S.C. § 1158(a)(2)(D) permitted him to apply for asylum, notwithstanding the fact that 8 U.S.C. § 1229a(c)(7)(C)(ii) appears to foreclose it.

The BIA has been charged with providing expert interpretations of the immigration laws, and this Court must give the BIA deference in making such determinations. "Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *INS v. Ventura*, 537 U.S. 12, 16 (2002). "This principle has obvious importance in the immigration context." *Id*. at 16-17; *see also INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (recognizing "that judicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" (quoting *INS v. Abudu*, 485 U.S. 94, 110 (1988))). "The agency can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides." *Ventura*, 537 U.S. at 17; *accord Gonzales v. Thomas*, ___ U.S. ____, ____, 126 S. Ct. 1613, 1615 (2006) ("[J]udicial judgment cannot be made to do service for an administrative judgment." (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943))). Accordingly, where, as here, a reviewing court cannot sustain an agency decision because the agency has failed to consider a legal issue central to resolution of the

petitioner's claims, the appropriate remedy is remand to the agency for further consideration. *See, e.g.*, *Ventura*, 537 U.S. at 16-17 (where BIA failed to consider legal issue concerning an alien's asylum application, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation").

For these reasons, we **GRANT** the petition for review, **VACATE** the BIA's order, and **REMAND** for further proceedings consistent with this order.