Muhammad IMRAN, Plaintiff,

v.

Peter D. KEISLER, Acting United States Attorney General,[1] Michael Chertoff, Secretary of the Department of Homeland Security, Linda Hartman,[2] Director, Des Moines Field Office, Bureau of Citizenship and Immigration Services, Robert Divine, Acting Director, Bureau of Citizenship and Immigration Services, Defendants.

No. 4:07–cv–00179.

United States District Court,
S.D. Iowa,
Central Division.

Oct. 11, 2007.

---

**1.** In his Complaint, Plaintiff named Alberto Gonzales as United States Attorney General. *See* Compl. On September 17, 2007, Peter D. Keisler was named as Acting United States Attorney General. Federal Rule of Civil Procedure 25(d)(1) provides that when a public officer is a party to an action in his or her official capacity, and during the pendency dies, resigns, or otherwise ceases to hold office, the officer's successor shall be automatically substituted as a party, and proceedings following the substitution shall be in the name of the substituted party. Accordingly, pursuant to Rule 25(d)(1), the Court hereby orders that Peter D. Keisler be substituted as a party in this action and further proceedings shall be in the name of Peter D. Keisler, not Alberto Gonzales.

**2.** In his Complaint, Plaintiff named Conrad Zaragoza as Director, Des Moines Field Office, Bureau of Citizenship and Immigration Services. *See* Compl. Defendants' counsel states that Linda Hartman has replaced Conrad Zaragoza as Director of the Des Moines Office of the Department of Homeland Security Bureau of Citizenship and Immigration Services. Pursuant to Rule 25(d)(1), the Court hereby orders that Linda Hartman be substituted as a party in this action and further proceedings shall be in the name of Linda Hartman, not Conrad Zaragoza.

Gary L Hayward, United States Attorney, Des Moines, IA, for Defendants.

Miryam Antunez de Mayolo, Antunez De Mayolo Law, Cedar Falls, IA, Thomas P. Frerichs, Frerichs Law Office PC, Waterloo, IA, for Plaintiff.

## ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court is Defendants, Peter D. Keisler, Michael Chertoff, Linda Hartman, and Robert Divine's ("Defendants") Motion to Dismiss or in the Alternative to Remand, filed on August 2, 2007. Clerk's No. 5. Plaintiff, Muhammad Imran ("Imran"), filed his Response on October 1, 2007. Clerk's No. 11. Defendants filed their Reply on October 3, 2007. Clerk's No. 12. The matter is fully submitted.

## I. FACTS

The facts of this case do not appear to be in dispute. Imran is a native and citizen of Pakistan. Compl., Facts ¶ 1. On September 27, 2002, Imran was granted permanent resident status. *Id.* ¶ 2. Three years later, on September 27, 2005, Imran became eligible to file a Form N–400, Application for Naturalization ("Form N–400"). *Id.* On or about June 29, 2005, Imran filed his Form N–400 with the Department of Homeland Security, United States Citizenship and Immigration Services ("CIS").[3] *Id.* ¶ 3. On or about April 5, 2006, Imran interviewed with Immigration Officer Thomas Sankey, and successfully passed the English language and United States history and government tests. *Id.* ¶ 4. Imran received a standard form letter, dated April 5, 2006, from the Des Moines Field Office of the Citizenship and Immigration Service ("Des Moines Field Office"), titled, "A Note to Our Applicants Regarding National Security Checks." Compl., Ex. 5. The letter stated:

> A final decision cannot be made on any application for naturalization . . . until national security checks are completed and the local CIS [Citizenship and Immigration Services] office receives a response.

> This process can take many months. Authorities in the Washington D.C. area complete the checks and this office has no control over the pace of their completion. In fact, **it is not unusual for the checks to take well over six months.**

> . . .

> Cases pending security checks are queried every week to ensure that those that have cleared are acted on in a timely manner.

*Id.* Although Imran was interviewed in April of 2006, it appears that his application is still being processed. *See id.,* Facts ¶ 5. Imran inquired about his Form N–400 on many occasions, but allegedly, the Des Moines Field Office "has neither provided

---

3. In his Complaint, Imran states that he became statutorily eligible to file a Form N400 on September 27, 2005, three years after the grant of his Permanent Resident status; however, according to the Complaint, Imran filed his Form N–400 on or about June 29, 2005, prior to the September 27, 2005 eligibility date. *See* Compl., Facts ¶¶ 2, 3.

a reason for the delay, nor adjudicated the Application." *Id.* ¶ 6.

## II.  LAW AND ANALYSIS

Imran claims that Defendants have "willfully and unreasonably delayed in and have refused to adjudicate the Application, thereby depriving [him] of the benefit of becoming a Naturalized [United States] Citizen." Compl., Claims ¶ 1. Imran requests that the Court assume jurisdiction over the case and naturalize him pursuant to 8 U.S.C. § 1447(b), or compel Defendants to adjudicate his Application. Defendants, however, request that the Court dismiss this case for lack of subject matter jurisdiction, or in the alternative, remand the case to the agency for adjudication of Imran's application once necessary background checks have been completed. The Court will address the arguments in turn.

### A.  *Subject Matter Jurisdiction*

Pursuant to 8 U.S.C. § 1447(b), if there is a failure by the CIS to make a determination on an application for naturalization before the end of the 120–day period after the date on which the examination is conducted pursuant to § 1446(b), the applicant may apply to the United States District court for a hearing on the matter. *See* 8 U.S.C. §§ 1446, 1447. Specifically, Section 1447(b) provides:

> If there is a failure to make a determination under section 335 [8 U.S.C. § 1446] before the end of the 120–day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the

matter, with appropriate instructions, to the Service to determine the matter. 8 U.S.C. § 1447(b).

Defendants argue that the Court lacks subject matter jurisdiction to make a determination on Imran's application under § 1447(b) because the 120–day period has not commenced. Defendants contend that the 120–day period does not start to run until the mandated FBI checks have been completed. Defendants explain that "[p]rior to the events of September 11, 2001, it made little difference whether FBI background checks were made prior to or after the final interview of applicants for naturalization for purposes of the 120 day time period." Defs.' Br. at 3. However, after the events of September 11, 2001, there has been "a huge increase in the type and number of matters requiring FBI background checks" and as a result, "a huge and lengthy backlog developed of naturalization applicants awaiting FBI background checks more than 120 days after their interview." *Id.* In response, CIS has recently directed its personnel to cease interviewing applicants for naturalization prior to the completion of the FBI background checks. *Id.* Defendants state that the purpose of the statute was to prevent the agency from "sitting on" applications ripe for review, whereas here, the application is not ripe for review because it is missing an essential element that is outside the agency's control.

▮ Defendants urge the Court to adopt the reasoning set forth in *Walji v. Gonzales*, 2007 WL 1747911 (5th Cir.2007) (*Walji I* ). In *Walji I*, the Fifth Circuit held that "when the CIS examination is premature because the mandatory security investigation is not complete, the 120–day time period of [ ] § 1447(b) does not begin to run...." 2007 WL 1747911, 2007 U.S.App. LEXIS 14450, at *8. However, after Defendants filed their motion, the

Fifth Circuit granted Walji's petition for rehearing and reversed its previous opinion. *See Walji v. Gonzales*, 500 F.3d 432, 433 (5th Cir.2007) (*Walji II*) (holding that the 120–day time period begins to run after the agency's initial interview of the applicant). Even before *Walji I* was reversed, Defendants acknowledged that the holding in *Walji I* was "inconsistent with a majority of the district court decisions," but Defendants nonetheless argued that it was the proper result, as the statute "did not intend to shift the matter from an administrative waiting room to one in the courthouse." Defs.' Br. at 4. The Court, however, agrees with the reasoning set forth in *Walji II* and the majority of courts which have held that the 120–day period starts at the completion of the interview. *See, e.g., Walji II*, at 436 (explaining that the plain language of the statute suggests that 120–day triggering event is a distinct, single event—the date on which the interview occurs—not an ongoing fluid process) (cases cited therein); *Khan v. Gonzales*, No. 07–cv–29, 2007 WL 1560321, *1, 2007 U.S. Dist. LEXIS 38912, at *4 (D.Neb. May 29, 2007) (holding that case law and a reasonable reading of the statute support the conclusion that the "examination" is complete when CIS finishes its interview of the applicant); *Khelifa v. Chertoff*, 433 F.Supp.2d 836, 841–42 (E.D.Mich.2006) (holding that the 120–day period commences when the applicant appears in person for the interview); *El–Daour v. Chertoff*, 417 F.Supp.2d 679, 683 (W.D.Pa.2005) (stating that the word "examination" as used in § 1447(b) means the interview). As the *Khan* court explained:

> A plain reading of §§ 1446(b) and 1447(b) cannot be reconciled with the ... argument that the examination is composed of the entire naturalization process. Section 1446(b) states that "any such employee shall, *at* the examination, inform the applicant of the remedies available." (Emphasis added).

Crucial is the word "at." This indicates that the drafters contemplated the examination occurring *at* a specific time and specific place. It is apparent that the drafters considered the examination to be an event and not a process.

2007 WL 1560321, *1, 2, 2007 U.S. Dist. LEXIS 38912, at *5. Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED.

## B.   *Remand Under § 1447(b)*

■ In the alternative, Defendants contend that the Court should remand the case back to CIS. The applicable portion of § 1447(b) provides that the Court "may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." 8 U.S.C. § 1447(b). Imran, however, argues that the Court should adjudicate this matter given the already extensive delay in his application. Although the Court is sympathetic to Imran's desire to prevent further delays in his application process to become a United States citizen, the Court believes that a remand is proper.

As noted by other district courts addressing factually identical cases, courts are not equipped with the expertise to conduct background checks or interpret the results of FBI background checks. *See, e.g., Khan*, 2007 WL 1560321, at *2–3, 2007 U.S. Dist. LEXIS 38912, at *7–8 (citing *El–Daour*, 417 F.Supp.2d at 683–84; *Khelifa*, 433 F.Supp.2d at 843); *Yang v. Gonzales*, No. 06–14816, 2007 WL 1232066, at *9–10, 2007 U.S. Dist. LEXIS 30736, at *9–10 (E.D.Mich. Apr. 24, 2007). "The logic behind requiring the [FBI] background check prior to determining an application is readily apparent. The purpose of a background check is to ensure public safety ... [and][i]t is apparent that Congress considered any determination of an application before completion of a back-

ground check to be premature." *Khan v. Gonzales,* No. 07–cv–29, 2007 WL 2108918, at *2–3, 2007 U.S. Dist. LEXIS 52489, at *6–7 (D.Neb. July 18, 2007) (*Khan II*). Accordingly, the Court is not in a position to adjudicate Imran's application. Moreover, a remand in this case is consistent with the rule that, "[g]enerally speaking, a court ... should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *Yang,* 2007 WL 1232066, at *3, 2007 U.S. Dist. LEXIS 30736, at *9 (quoting *Immigration and Naturalization Service v. Ventura,* 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002)).

The Court can understand Imran's frustration with the naturalization process. Unfortunately, the process of becoming a United States citizen can be long and arduous. *Khan II,* 2007 WL 2108918, at *3, 2007 U.S. Dist. LEXIS 52489, at *9. Here, there are no allegations that the FBI has purposefully delayed completing Imran's background check, or that the FBI discriminated against Imran on any improper basis. *Id.* These background investigations require thoroughness and care, which takes time. Moreover, once Imran's FBI background check is completed, the representatives at CIS, with their extensive knowledge and experience, are in the best position to interpret the results and make determinations on Imran's application. Accordingly, Defendants' motion to remand is GRANTED.

## III. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss or in the Alternative to Remand (Clerk's No. 5) is DE-NIED in part and GRANTED in part. The Court ORDERS that this matter be remanded to the CIS with instructions to render its determination on Muhammad Imran's application as expeditiously and promptly as possible.

IT IS SO ORDERED.