

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-16-2008

# Agbortabi v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3130

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Agbortabi v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1737.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1737

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-3130

ARMSTRONG AGBORTABI
a/k/a James Lester,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A71-031-696
(U.S. Immigration Judge: Honorable Alberto J. Riefkohl)

Argued September 10, 2007

Before:  SCIRICA, *Chief Judge*, RENDELL and FUENTES, *Circuit Judges*.

(Filed: January 16, 2008 )

RAYMOND P. D'UVA, ESQUIRE (ARGUED)
Law Offices of Raymond P. D'Uva
17 Academy Street, Suite 1000
Newark, New Jersey 07102
        Attorney for Petitioner

BRYAN S. BEIER, ESQUIRE (ARGUED)
RICHARD M. EVANS, ESQUIRE
DONALD E. KEENER, ESQUIRE
DAVID E. DAUENHEIMER, ESQUIRE
United States Department of Justice

Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
    Attorneys for Respondent

---

## OPINION OF THE COURT

---

SCIRICA, *Chief Judge*.

Petitioner Armstrong Agbortabi seeks review of the Board of Immigration Appeals's order reversing the decision of the Immigration Judge to grant his application for political asylum and withholding of removal and ordering him removed. We have jurisdiction to review the Board's order under 8 U.S.C. § 1252. We will vacate and remand.

### I.

On May 23, 2002, the IJ granted Agbortabi withholding of removal but denied his asylum request. The IJ based his decision in part on an article about Agbortabi in the *Watchman*, a newspaper from Agbortabi's homeland of Cameroon. Subsequently, a report by a consular investigative assistant ("CIA") with the U.S. Consulate in Cameroon questioned the authenticity of the article as well as other documents submitted by Agbortabi, including two documents (titled "Convocation" and "Warrant of Arrest") purported to be from the Ministry of Justice in Douala, Cameroon, and the affidavit of a barrister in Cameroon. On remand from the BIA with instruction to consider the CIA report, the IJ, following a hearing, examined the report at length but again granted

2

withholding of removal.  Deciding the IJ's analysis was insufficient and failed to explicitly include a credibility determination, the BIA again remanded the case to the IJ.

Following the second remand, the IJ reconsidered the case with both parties declining to offer further evidence.  On March 11, 2004, the IJ issued a lengthy decision granting Agbortabi withholding of removal as well as asylum.  Although considering the CIA report at length, the IJ explicitly found Agbortabi credible.  The IJ's decision was again reviewed by the BIA, which found the IJ's credibility determination clearly erroneous.  The BIA then independently made an adverse credibility determination and ordered Agbortabi removed.  Agbortabi appealed, and we remanded to the BIA to clarify whether it had inappropriately enagaged in *de novo* review and whether it was required to remand to the IJ on these facts.  In a decision dated May 22, 2006, the BIA confirmed its application of a clear error, as opposed to *de novo*, standard of review and also stated it found no statutory or regulatory requirement for remand.  This petition for review followed.

**II.**

Where, as here, the BIA issues a decision on the merits, we review the BIA's, rather than the IJ's, order.  *Li v. Attorney General*, 400 F.3d 157, 162 (3d Cir. 2005).  We review factual findings, including credibility determinations, under a substantial evidence standard.  *See* 8 U.S.C. § 1252(b)(4)(B) (codifying *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992)); *Tarrawally v. Ashcroft*, 338 F.3d 180, 184 (3d Cir. 2003).  Under this deferential standard, we will reverse the BIA's decision only "if the evidence is such that

3

a reasonable factfinder would be compelled to conclude otherwise." *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006) (citation omitted). "So long as the BIA's decision is supported by 'reasonable, substantial, and probative evidence on the record considered as a whole, we will not disturb the BIA's disposition of the case.'" *Id.* (quoting *Elias-Zacarias*, 502 U.S. at 481).

**III.**

The BIA found the IJ's credibility determination clearly erroneous, because the BIA found the IJ erred in its evaluation of the CIA report. The BIA found the report, when properly evaluated, should have been afforded significant weight in determining Agbortabi's credibility.

In its review of the IJ's credibility determination, the BIA examined the significance of the CIA report in potentially discrediting the documents submitted by Agbortabi. With respect to the *Watchman* newspaper article, the BIA found the IJ erred in criticizing the consular investigation into the article and finding that the probative value of the article had not been rebutted. The BIA's finding on the article was based on evidence that additional copies of the article had not been located during a six-month period after the article "appeared" and that several interviewees in the location of the paper's origin were unfamiliar with it. But as the IJ identified, the CIA investigation found an independent newspaper manager who, although unfamiliar with the particular article, confirmed the newspaper was a legitimate publication and detailed the region of its circulation. In light of this fact, substantial evidence does not support the conclusion

4

that the newspaper article did not exist. Accordingly, the IJ appropriately considered the newspaper article as relevant to his credibility determination.

But the CIA report also spoke to the apparently fraudulent nature of Agbortabi's other documents. While the IJ expressly credited the report in his decision and stated he had carefully considered it, he discounted its significance based on his uncertainty as to the veracity of the report's source.[1] The BIA found this rationale behind the IJ's evaluation of the report was based on speculation and therefore improper. Primarily for this reason, the BIA found the IJ's credibility determination clearly erroneous.

After finding the IJ's credibility determination clearly erroneous, the BIA found Agbortabi not credible and ordered his removal. In this regard, the Board independently weighed and balanced the underlying facts relevant to Agbortabi's credibility. We do not hold the BIA may not make an independent credibility determination where it finds the IJ's determination clearly erroneous. But in this case the BIA should have remanded to the IJ for a new credibility determination properly considering and weighing all of the relevant factors. *See Gao v. Ashcroft*, 299 F.3d 266, 279 (3d Cir. 2002) (upon vacating a credibility determination, remanding for the IJ to make a new credibility determination and to decide the petitioner's asylum and withholding of removal claims without reliance

---

[1] The IJ questioned the report's revelations as to the fraudulent nature of Agbortabi's convocation and arrest warrant documents, because the source of the information was an official of the government allegedly persecuting Agbortabi. Because he perceived the source would have a motive to lie in this situation, the IJ discounted the weight of the CIA report as part of his credibility determination.

on the credibility determination previously made).  Our approach in *Dia v. Aschroft*, 353

F.3d 228 (3d Cir. 2003), is instructive:

> Dia asks that we reverse the BIA and grant the relief he seeks. But we are
> not finding Dia credible. Rather, we are concluding, as we have repeatedly
> before, that because of the lack of substantial evidence to support the
> adverse credibility determination, we will remand in order for the agency to
> further explain or supplement the record.  Moreover, as we have recently
> said: "We will not assess [Dia's] entitlement to relief based on the record as
> we have required it to be modified by this opinion because the agency
> should have the opportunity to do so." *Ezeagwuna v. Ashcroft,* 325 F.3d
> 396, 411 (3d Cir. 2003) (citing *INS v. Orlando Ventura,* 537 U.S. 12, 17-18
> (2002)); *see also Secaida-Rosales v. INS,* 331 F.3d 297, 313 (2d Cir. 2003)
> (stating, under similar circumstances, that "[t]he IJ should then reach the
> questions of asylum and withholding of deportation in light of such
> evidence, but without regard to its prior adverse credibility determination");
> *Senathirajah v. INS,* 157 F.3d 210, 222 (3d Cir. 1998) (remanding to BIA
> with instructions to remand to IJ for decision on asylum and withholding
> application, but without consideration of erroneous adverse credibility
> finding reversed on appeal).

*Id*. at 260-61.

The government contends the BIA acted properly because its reversal of the IJ

based on its assessment of the CIA report is conclusive as to Agbortabi's credibility.

Specifically, the government asserts that the CIA report shows Agbortabi submitted

fraudulent documents as part of his application for asylum, and that this fact–when

appropriately considered by the IJ–renders Agbortabi *per se* not credible.  The

government relies on *In re O-D-*, 21 I&N Dec. 1079, 1998 WL 24904 (BIA 1998)

[hereinafter *O-D-*].  But *O-D-* did not hold that the submission of fraudulent documents

necessitates a *per se* adverse credibility determination.  The Board in *O-D-* explained that

such facts were indicative of a lack of credibility, and a "critical factor" of the analysis, but not dispositive in determining credibility. *See id*. at \*1083. The Board further wrote:

> [I]n the context of an asylum adjudication, there may be instances in which a respondent voluntarily and intentionally submits a document into evidence, intending to establish his eligibility for asylum, that is later shown to be counterfeit. The adjudicator *may consider* whether that document points to a respondent's lack of credibility regarding the asylum claim. Ordinarily, it is reasonable to infer that a respondent with a legitimate claim does not usually find it necessary to invent or fabricate documents in order to establish asylum eligibility. On the other hand, there may be reasons, fully consistent with the claim of asylum, that will cause a person to possess false documents, . . . .

> We find that this respondent's presentation of at least one counterfeit document, and probably two, submitted to prove a central element of the claim in an asylum adjudication, *indicates his lack of credibility*. We also find that the presentation of such questionable documents, in the absence of an explanation regarding such presentation, *creates serious doubts* regarding the respondent's overall credibility.

*Id*. (emphases added).

Moreover, the *O-D-* opinion contained extensive discussion of "other considerations" that, taken together with the fraudulent documents submitted there, properly supported an adverse credibility finding in that case. *See id*. at \*1083-1084. One of those considerations given great weight was the adverse credibility finding of the IJ in that case, *id*. at \*1084, a determination to which the Board in *O-D-* recognized it was required to afford great deference, *see id*. (citations omitted).

Here, the IJ found Agbortabi wholly credible and suggested he would reach the same conclusions irrespective of the "fraudulent" nature of the documents based on Agbortabi's testimony and several other factors such as State Department reports about

7

the conditions in Cameroon. *See In re Agbortabi*, A71-031-696, Decision of the Immigration Judge, April 21, 2004, at 10-11. Although the BIA found the IJ's credibility determination clearly erroneous, the IJ's error in evaluating the CIA report is not necessarily conclusive as to Agbortabi's credibility. As in *O-D-*, a proper determination of Agbortabi's credibility will evaluate "other considerations" in addition to the CIA report. Consequentially, the IJ must make a new credibility determination on remand appropriately weighing the CIA report. But in making this determination, the IJ will also be entitled to consider the *Watchman* article, to the extent he finds it authentic, as well as State Department country reports, and all other appropriate factors.

## IV.

For the foregoing reasons, we will vacate the decision of the BIA and remand with instructions that the matter be remanded to the IJ for further proceedings consistent with this opinion.