# IMMIGRATION AND NATURALIZATION SERVICE *v.* ORLANDO VENTURA

No. 02–29.   Decided November 4, 2002

PER CURIAM.

Federal statutes authorize the Attorney General, in his discretion, to grant asylum to an alien who demonstrates "persecution or a well-founded fear of persecution on account of . . . [a] political opinion," and they require the Attorney General to withhold deportation where the alien's "life or freedom would be threatened" for that reason. Immigration and Nationality Act, §§ 101(a)(42)(A), 208(a), 243(h), 66 Stat. 166, as amended, 8 U. S. C. §§ 1101(a)(42), 1158(a), 1253(h)(1) (1994 ed. and Supp. V). The Board of Immigration Appeals (BIA) determined that respondent Fredy Orlando Ventura failed to qualify for this statutory protection because any persecution that he faced when he left Guatemala in 1993 was not *"on account of"* a *"political opinion."* The Court of Appeals for the Ninth Circuit reversed the BIA's holding. 264 F. 3d 1150 (2001) (emphasis added).

The Court of Appeals then went on to consider an alternative argument that the Government had made before the Immigration Judge, namely, that Orlando Ventura failed to qualify for protection regardless of past persecution because conditions in Guatemala had improved to the point where no realistic threat of persecution currently existed. Both sides pointed out to the Ninth Circuit that the Immigration Judge had held that conditions had indeed changed to that point but that the BIA itself had not considered this alternative claim. And both sides asked that the Ninth Circuit remand the case to the BIA so that it might do so. See Brief for Petitioner in No. 99–71004 (CA9), pp. 5, 6, 24; Brief for Respondent in No. 99–71004 (CA9), pp. 8, 9, 23.

The Court of Appeals, however, did not remand the case. Instead, it evaluated the Government's claim itself. And it decided the matter in Orlando Ventura's favor, holding that the evidence in the record failed to show sufficient change. 264 F. 3d, at 1157–1158. The Government, seeking certiorari here, argues that the Court of Appeals exceeded its legal authority when it decided the "changed circumstances" matter on its own. We agree with the Government that the Court of Appeals should have remanded the case to the BIA. And we summarily reverse its decision not to do so.

I

We shall describe the basic proceedings so far. In 1993 Orlando Ventura, a citizen of Guatemala, entered the United States illegally. In 1995 the Attorney General began deportation proceedings. And in 1998 an Immigration Judge considered Orlando Ventura's application for asylum and withholding of deportation, an application based upon a fear and threat of persecution "on account of" a "political opinion." 8 U. S. C. §§ 1101(a)(42)(A), 1253(h) (1994 ed. and Supp. V). Orlando Ventura testified that he had received threats of death or harm unless he joined the guerrilla army, that his family members had close ties to the Guatemalan military, and that, in his view, the guerrillas consequently believed he held inimical political opinions.

The Immigration Judge denied relief. She recognized that Orlando Ventura subjectively believed that the guerrillas' interest in him was politically based. And she credited testimony showing (a) that Orlando Ventura's family had many connections to the military, (b) that he was very close to one cousin, an army lieutenant who had served for almost 12 years, (c) that in 1987 his uncle, a local military commissioner responsible for recruiting, was attacked by people with machetes, and (d) that in 1988 his cousin (a soldier) and the cousin's brother (a civilian) were both shot at and the soldier-cousin killed. Nonetheless, Orlando Ventura had

failed objectively "to demonstrate that the guerillas' inter-
est" in him was "on account of his political opinion." App.
to Pet. for Cert. 22a. The Immigration Judge added that
"conditions" in Guatemala had changed significantly. Even
"if the guerillas" once had had a politically based "interest"
in Orlando Ventura, the evidence failed to show that the
guerrillas would "continue to have motivation and inclination
to persecute him in the future." *Ibid.*

The BIA, considering the matter *de novo,* "agree[d]" with
the Immigration Judge that Orlando Ventura "did not meet
his burden of establishing that he faces persecution 'on ac-
count of' a qualifying ground . . . ." *Id.,* at 15a. The BIA
added that it "need not address" the question of "changed
country conditions." *Ibid.*

The Court of Appeals, reviewing the BIA's decision, de-
cided that this evidence *"compel[led] "* it to reject the BIA's
conclusion. 264 F. 3d, at 1154 (emphasis added); see *INS* v.
*Elias-Zacarias,* 502 U. S. 478, 481, n. 1 (1992) ("To reverse
the BIA finding we must find that the evidence not only
*supports* that conclusion, but *compels* it . . ." (emphasis in
original)). It recognized that the BIA had not decided
the "changed circumstances" question and that "generally"
a court should remand to permit that consideration. 264
F. 3d, at 1157. Cf. *Castillo* v. *INS,* 951 F. 2d 1117, 1120–1121
(CA9 1991) (specifying that the Court of Appeals must re-
view the decision of the BIA, not the underlying decision of
the immigration judge). But the Court of Appeals added
that it need "not remand . . . when it is clear that we would
be compelled to reverse the BIA's decision if the BIA decided
the matter against the applicant." 264 F. 3d, at 1157. And
it held that the record evidence, namely, a 1997 State Depart-
ment report about Guatemala, "clearly demonstrates that
the presumption of a well-founded fear of future persecution
was not rebutted." *Ibid.* Hence, it concluded, "remand . . .
is inappropriate." *Ibid.*

16

The Government challenges the decision not to remand. And it says the matter is important. The "error," it says, is a "recurring error [that] puts the Ninth Circuit in conflict with other courts of appeals, which generally respect the BIA's role as fact-finder by remanding to the BIA in similar situations." Pet. for Cert. 11. See also Pet. for Cert. in *INS* v. *Chen*, O. T. 2002, No. 25, p. 23 (referring to eight other recent decisions from the Court of Appeals for the Ninth Circuit, which, in the Government's view, demonstrate this trend). After examining the record, we find that well-established principles of administrative law did require the Court of Appeals to remand the "changed circumstances" question to the BIA.

II

No one disputes the basic legal principles that govern remand. Within broad limits the law entrusts the agency to make the basic asylum eligibility decision here in question. *E. g.*, 8 U. S. C. § 1158(a); 8 U. S. C. § 1253(h)(1) (1994 ed.); *Elias-Zacarias, supra,* at 481; *INS* v. *Aguirre-Aguirre,* 526 U. S. 415 (1999). See also 8 CFR § 3.1 (2002). In such circumstances a "judicial judgment cannot be made to do service for an administrative judgment." *SEC* v. *Chenery Corp.,* 318 U. S. 80, 88 (1943). Nor can an "appellate court . . . intrude upon the domain which Congress has exclusively entrusted to an administrative agency." *Ibid.* A court of appeals "is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." *Florida Power & Light Co.* v. *Lorion,* 470 U. S. 729, 744 (1985). Rather, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Ibid.* Cf. *SEC* v. *Chenery Corp.,* 332 U. S. 194, 196 (1947) (describing the reasons for remand).

Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands. This principle has obvious im-

portance in the immigration context. The BIA has not yet considered the "changed circumstances" issue. And every consideration that classically supports the law's ordinary remand requirement does so here. The agency can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides.

These basic considerations indicate that the Court of Appeals committed clear error here. It seriously disregarded the agency's legally mandated role. Instead, it independently created potentially far-reaching legal precedent about the significance of political change in Guatemala, a highly complex and sensitive matter. And it did so without giving the BIA the opportunity to address the matter in the first instance in light of its own expertise.

The Court of Appeals rested its conclusion upon its belief that the basic record evidence on the matter—the 1997 State Department report about Guatemala—compelled a finding of insufficiently changed circumstances. But that foundation is legally inadequate for two reasons. First, the State Department report is, at most, ambiguous about the matter. The bulk of the report makes clear that considerable change has occurred. The report says, for example, that in December 1996 the Guatemalan Government and the guerrillas signed a peace agreement, that in March 1996 there was a cease fire, that the guerrillas then disbanded as a fighting force, that "the guerrillas renounced the use of force to achieve political goals," and that "there was [a] marked improvement in the overall human rights situation." Bureau of Democracy, Human Rights and Labor, U. S. Dept. of State, Guatemala-Profile of Asylum Claims & Country Conditions 2–4 (June 1997).

As the Court of Appeals stressed, two parts of the report can be read to the contrary. They say that (1) even "after

the March cease-fire, guerrillas continued to employ death threats" and (2) "the level of crime and violence now seems to be higher than in the recent past." *Id.*, at 3–4.  Yet the report itself qualifies these statements.  As to the second, the report (as the Court of Appeals noted) says: "*Although* the level of crime and violence now seems to be higher than in the recent past, *the underlying motivation in most asylum cases now appears to stem from common crime and/or personal vengeance,*" i. e., not politics.  *Id.*, at 4 (emphasis added).  And the report (in sections to which the Court of Appeals did not refer) adds that in the context of claims based on political opinion, in "our experience, only party leaders or high-profile activists generally would be vulnerable to such harassment and usually only in their home communities." *Id.*, at 8.  This latter phrase "only in their home communities" is particularly important in light of the fact that an individual who can relocate safely within his home country ordinarily cannot qualify for asylum here.  See 8 CFR § 208.13(b)(1)(i) (2002).

Second, remand could lead to the presentation of further evidence of current circumstances in Guatemala—evidence that may well prove enlightening given the five years that have elapsed since the report was written.  See §§ 3.1, 3.2 (permitting the BIA to reopen the record and to remand to the Immigration Judge as appropriate).

## III

We conclude that the Court of Appeals should have applied the ordinary "remand" rule.  We grant the Government's petition for certiorari.  We reverse the judgment of the Court of Appeals for the Ninth Circuit insofar as it denies remand to the agency.  And we remand the case for further proceedings consistent with this opinion.

*So ordered.*