**Wassim ZOGHBI, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 03–72562.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 7, 2005.

Decided Aug. 16, 2005.

Rehearing Granted and Amended Nov. 28, 2005.

---

**7.** *See id.*

Jagdip Singh Sekhon, Esq., Sekhon & Sekhon, PLC, San Francisco, CA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. Lefevre, Chief Legal Officer, Office of the District Counsel Department of Homeland Security, San Francisco, CA, Michael P. Lindemann, Esq., Christopher C. Fuller, DOJ–U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: B. FLETCHER, RYMER and FISHER, Circuit Judges.

## MEMORANDUM *

Wassim Zoghbi appeals the decision of the Board of Immigration Appeals ("BIA"), adopting the ruling of an Immigration Judge ("IJ") that deemed his asylum application abandoned because he left the country for 19 days to go to Lebanon—the country from which he seeks refuge—where his father was undergoing heart surgery. We hold that the IJ improperly decided that petitioner had abandoned his application. Because petitioner sought advance parole prior to departure, his claim is governed by 8 C.F.R. 208.8(b), which provides that:

An applicant who leaves the United States pursuant to advance parole under

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

§ 212.5(f) of this chapter and returns to the country of claimed persecution shall be presumed to have abandoned his or her application, unless the applicant is able to establish compelling reasons for such return.

The IJ reasoned that Zoghbi "went with a father who chose to go there because medical care was cheaper." "Since, in fact, his father didn't have a compelling reason to go there, he just went there to save money on the operation, I find the respondent did not have a compelling reason to go." We agree with Zoghbi that the IJ's focus should have been on whether petitioner had a compelling reason to accompany his father to Lebanon, *not* whether Zoghbi's father had a compelling reason for seeking medical treatment there. Tending to the serious illness and surgery of his father provided petitioner with a compelling reason to go to Lebanon. *See e.g.*, 8 U.S.C. § 1229a(e)(1) (noting that "exceptional circumstances" in excusing failure to appear at hearing refers to "serious illness of the alien or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances beyond the control of the alien").

■ In the alternative, the IJ concluded that even if petitioner had not abandoned his asylum application, he nonetheless was ineligible for asylum or withholding of removal because he failed to demonstrate that he was persecuted. The BIA also affirmed this holding. To demonstrate past persecution, a petitioner "must show that he was harmed on account of his race, religion, nationality, membership in particular social group, or political opinion." *Montoya–Ulloa v. INS*, 79 F.3d 930, 931 (9th Cir.1996). The main incident petition-

er detailed in support of his claim for refugee status involved his beating at the checkpoint border on his way from West to East Beirut. The beating, which caused him to go to the hospital and seek treatment, constitutes persecution or harm within the meaning of the act. *Id.*

The IJ, however, found that the beatings were not on account of petitioner's religion but instead were a general response to individuals who attempted to enter the Hezbollah-controlled area of Lebanon. The IJ categorized the beating as done in furtherance of a war, rather than arising from a religious conflict, saying that Zoghbi was beaten "primarily and almost entirely because that serve [sic] the military purposes of the Hesbollah to keep potential opponents out of their area." However, the IJ also stated that "I'm sure Hesbollah, as Muslims, dislike the respondent because he was a Christian and viewed him as an opponent."

Although the IJ found that Zoghbi suffered persecution *primarily* because of the military dispute in that region, he acknowledged petitioner's religion was another basis for Hezbollah's actions. "[P]ersecutory conduct may have more than one motive, and so long as one motive is one of the statutorily enumerated grounds, the requirements have been satisfied." *Singh v. Ilchert*, 63 F.3d 1501, 1509 (9th Cir.1995). Petitioner thus has established that he was persecuted, under a mixed motive theory.

■ Zoghbi's past persecution creates a rebuttable presumption of a well-founded fear of future persecution, 8 C.F.R. § 208.13(b)(1), and therefore potentially qualifies him for a discretionary grant of asylum status under 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A), or withholding of removal under 8 C.F.R. § 208.16(b)(1)(i). Therefore, we remand to the BIA to determine whether Zoghbi

qualifies for asylum and withholding of removal and, if appropriate, to exercise discretion on behalf of the Attorney General with regard to asylum. *INS v. Ventura,* 537 U.S. 12, 17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002). Our remand is without prejudice to the BIA considering evidence that there has been a fundamental change in circumstances such that Zoghbi no longer has a well-founded fear of persecution in Lebanon or that he could avoid persecution by moving to another part of Lebanon. *See* 8 C.F.R. §§ 208.13(b)(1)(i)(A)-(B), 208.16(b)(1)(i)(A)-(B).

PETITION GRANTED; REMANDED.

RYMER, Circuit Judge, concurring in part and dissenting in part.

I agree that an applicant should not be presumed to abandon his application when, as here, he returned to the country of origin for his father's operation. However, I do not believe that the immigration judge was compelled to find that any of the incidents upon which Zoghbi relies amounted to persecution. The house burning was untargeted, random, war-related violence, as was what happened at the checkpoint. The Hesbollah checkpoint was not there to target Zoghbi in particular or Christians in general; it was there to keep non-Hesbollahs out of their sector. The guards mistreated the Muslims in the group as well as the Christians, albeit not quite as offensively. It was a scary, but one-time, event. The police responded to Zoghbi's complaint, abandoning their investigation only when they learned that Zoghbi had left for the United States. There is no evidence that his family, which returns frequently to Lebanon, has been harassed at all, nor was Zoghbi when he returned. In these circumstances, the IJ was not compelled to find that Zoghbi would encounter similar difficulties in the future; there is nothing in the record to

suggest that the Hesbollah have any interest in Zoghbi, or that he could not avoid a similar confrontation either by not going into the Hesbollah sector or relocating elsewhere in the country. Accordingly, I would deny the petition.