BERZON, Circuit Judge,
concurring in the order denying the petition for rehearing en banc:
I.
I begin by explaining why I am writing this concurrence: A practice has developed in this court of writing dissents from denial of rehearing en bane consideration as a matter of routine. Those dissents sometimes read more like petitions for writ of certiorari than judicial opinions of any stripe. They pose a dilemma for those who believe the original opinion correct, as they may raise issues not addressed by that opinion because not articulated by the parties before the petition for rehearing stage- — or ever.
The result, absent some response, is a distorted presentation of the issues in the case, creating the impression of rampant error in the original panel opinion although a majority — often a decisive majority — of the active members of the court either perceived no error or thought the case not one of much consequence. At the same time, answering the newly raised contentions by amending the panel opinion is usually not feasible. The court has voted not to rehear en banc the original opinion and ought not to have to accept a new version without a second opportunity to determine whether the opinion deserves en banc consideration. The result, quite obviously, could be a form of infinite regression which precludes us from ever finally deciding the case.
In this case, Judge Kozinski writes an impassioned dissent from denial of en banc consideration, accusing the panel majority of all manner of judicial perfidy. The problem is that his accusations are either flat wrong or indicate a misunderstanding of the holdings in the panel opinion. As the author of the panel opinion, I have no choice but to try to set the record straight. So as to avoid establishing a new tradition of group concurrences in denial of en banc to match the group dissents, I intentionally write for myself alone, without the concurrence of any of my colleagues.
II.
The majority opinion in Defenders of Wildlife v. EPA, 420 F.3d 946 (9th Cir.2005), if carefully read, contains responses to most of the baseless attacks that Judge Kozinski has dropped upon it. Among other errors in the dissent from denial of rehearing en banc that are exposed in the opinion are:
(1) the notion that the national Environmental Protection Agency (EPA) did not endorse in this case the position that the Endangered Species Act requires consultation with regard to Clean Water Act per *403 mitting decisions, Kozinski Dissent at 6290-91, when it did, see Defenders of Wildlife, 420 F.3d at 959-60;[1]
(2) the repeated assertion that section 401 of the Clean Water Act “precludes” application of the plain language of section 7 of the after-enacted Endangered Species Act, Kozinski Dissent at 6294, when the pertinent part of the Clean Water Act does not mention the Endangered Species Act at all, see Defenders of Wildlife, 420 F.3d at 963-69;
(3) the insistence that the Endangered Species Act does not apply to any action “authorized, funded, or carried out” by a federal agency, Kozinski Dissent at 6293, when that is exactly what section 7(a)(2) says, in a perfectly clear statutory requirement that may not be contravened by an interpretative regulation, see Chevron U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-43 & n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); Defenders of Wildlife, 420 F.3d at 969;
(4) the allegation that there was not a preexisting circuit split, even though Defenders of Wildlife v. EPA, 882 F.2d 1294 (8th Cir.1989), and Conservation Law Foundation v. Andrus, 623 F.2d 712 (1st Cir.1979), held that agencies do have to comply with the Endangered Species Act as well as their own governing statutes, see Defenders of Wildlife, 420 F.3d at 970;
(5) the contention that the analysis contained in Platte River Whooping Crane Critical Habitat Maintenance Trust v. Federal Energy Regulatory Commission, 962 F.2d 27, 34 (D.C.Cir.1992), and American Forest & Paper Ass’n v. U.S. Environmental Protection Agency, 137 F.3d 291, 293-94 (5th Cir.1998), is more accurate than the analysis in Defenders of Wildlife, even though those cases rely on the language of section 7(a)(1) and disregard the quite different wording of section 7(a)(2), see Defenders of Wildlife, 420 F.3d at 970-71;
(6) the statement that American Forest decided precisely the same question addressed in Defenders of Wildlife, Kozinski Dissent at 400, when the issue in that case was not what factors the EPA must consider in making the transfer decision but whether the EPA must impose Endangered Species Act requirements on the states as a condition of transfer;
(7) the accusation that the panel opinion “ignor[ed] at least six prior opinions of our own court,” Kozinski Dissent at 395, when *404 the panel opinion discusses and distinguishes those opinions at some length, Defenders of Wildlife, 420 F.3d at 967-69; and
(8) the assertion that the Fish and Wildlife Service’s (FWS) position regarding the impact of the transfer is entitled to Chevron deference, Kozinski Dissent at 398, even though that position required, in part, an interpretation of the Clean Water Act, over which the FWS has no regulatory power, 33 U.S.C. § 1251(d) (designating the Administrator of the EPA to “administer this chapter”).[2]
There is, however, one point upon which Judge Kozinski places much stock — perhaps more than on any other — that is not addressed in the majority panel opinion. The reason for the lapse is not that Judge Kozinski is correct in his emphatic assertions regarding Department of Transportation v. Public Citizen, 541 U.S. 752, 124 S.Ct. 2204, 159 L.Ed.2d 60 (2004), but that he is so wrong that there was no reason we would have addressed his argument in the first instance.
III.
Judge Kozinski boldly asserts that the panel opinion “flies in the face of Public Citizen.” The assertion that the two cases are identical, even similar, misunderstands both Public Citizen and Defenders of Wildlife itself, while ignoring a Supreme Court case that is closely on point, Tennessee Valley Authority v. Hill, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978).
The Endangered Species Act, at issue in Defenders of Wildlife, sets a substantive requirement that all agencies must follow. As Tennessee Valley Authority states, the Endangered Species Act “affirmatively commandos ] all federal agencies ‘to insure that actions authorized, funded, or carried out by them do not jeopardize the continued existence’ of an endangered species.” Defenders of Wildlife, 420 F.3d at 964 (quoting Tenn. Valley Auth., 437 U.S. at 173, 98 S.Ct. 2279). Public Citizen concerned an entirely different environmental statute, the National Environmental Policy Act (NEPA). NEPA, in contrast to the Endangered Species Act, establishes only the requirement that environmental impact must be considered when making certain federal decisions. See 42 U.S.C. § 4332(2)(C) (requiring a statement of environmental impact for “major Federal actions” but requiring no federal response to any environmental impact demonstrated); Public Citizen, 541 U.S. at 756-57, 124 *405 S.Ct. 2204 (citing Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 350, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989)).
Public Citizen concerned a congressionally enacted moratorium prohibiting certain motor carriers from obtaining operating authority within the United States and authorizing the President to lift the moratorium. Id. at 759, 124 S.Ct. 2204. In 2002, the President lifted the moratorium with respect to Mexican motor carriers. Id. at 762, 124 S.Ct. 2204. The Federal Motor Carrier Safety Administration, the agency with authority to grant registration to foreign motor carriers, issued rules for monitoring Mexican motor carriers. Id. Petitioners sued, claiming that the rules were promulgated in violation of NEPA and the Clean Air Act. Id.
The Supreme Court rejected petitioners’ arguments. Pertinent here is the Court’s discussion of NEPA, as that is the portion of Public Citizen with which Judge Kozin-ski claims Defenders of Wildlife is in conflict.[3] Critically for present purposes, NEPA is a procedural statute only, see id. at 756, 124 S.Ct. 2204; it provides specific steps that must be taken before making decisions with regard to major actions that the agency has authority to undertake, but does not direct that environmental considerations actually influence the action.[4] In contrast, the Endangered Species Act provides that in taking any action authorized, funded, or carried out by the agency, any agency must meet a substantive requirement — it must not threaten listed species. See Hill, 437 U.S. at 188 n. 34, 98 S.Ct. 2279 (distinguishing NEPA, as a procedural statute,' from the Endangered Species Act, as a substantive statute).
Public Citizen considered whether the Department of Transportation (DOT) was required to “take into account the environmental effects of increased cross-border operations of Mexican motor carriers.” Id. at 765, 124 S.Ct. 2204. The Supreme Court held that the agency was not required to do so, because it “has no ability to countermand the President’s lifting of the moratorium or otherwise categorically to exclude Mexican carriers from operating within the United States.” Id. at 766, 124 S.Ct. 2204. In other words, NEPA’s purposes would not be served by requiring the agency to engage in NEPA’s procedural steps with regard to a decision it could not make. Id. at 769, 124 S.Ct. 2204. Because the DOT in Public Citizen had no authority to determine whether to allow in the Mexican trucks, it had no occasion *406 under NEPA to consider environmental factors in making such a decision.
Here, the central question concerns whether EPA has a substantive responsibility and authority, created by the Endangered Species Act itself, to refrain from taking action that threatens listed species. If it does, then there is nothing futile about considering whether endangered species will be affected, for that is the inquiry the statute dictates.
The difference between NEPA, a strictly procedural statute, and the Endangered Species Act, a partially substantive statute, is critical. Public Citizen determined because there was no statutory authority for the Department of Transportation to ban the Mexican trucks for environmental reasons, there were therefore no procedures mandated by NEPA to inform the phantom decision. Only the most myopic observer could fail to see the difference between a statute that simply provides a procedure to inform decisionmaking processes governed entirely by other statutes from one that sets a substantive decision-making requirement.
The central dispute in this case concerns the reach of the substantive mandate of section 7 of the Endangered Species Act. The question in this case is one specific to the Endangered Species Act and depends only on the particular language, history, and administrative application of that statute. As to that question, Public Citizen, a case that has nothing to do with the Endangered Species Act here at issue and that construed a statute with no substantive import, emphatically does not “appl[y] equally to this case.” Kozinski Dissent at 399. Instead, Public Citizen is entirely uninformative on the key legal point in this case.

. Judge Kozinski insists that "[a]ll EPA asks for is to have an opportunity to clarify its position on the issue, and explain why its decision to transfer permitting authority to Arizona made sense.” Kozinski Dissent at 401; see also id. at 396. In fact, in its petition for rehearing en banc the EPA quarreled at length with the merits of the majority opinion, and, building upon Judge Thompson’s dissent, asserted an intracircuit conflict. The possibility of a remand for clarification of the agency's interpretation of the statute is mentioned in a single footnote and only with regard to the portion of the opinion that discusses EPA’s prior inconsistent positions (an inconsistency which, unlike Judge Kozinski, the EPA does not dispute).
Furthermore, Judge Kozinski’s citation to Gonzales v. Thomas, - U.S. -, 126 S.Ct. 1613, 164 L.Ed.2d 358 (2006) is inapposite. In Thomas, the Supreme Court faulted this court for not giving the agency an opportunity to decide an issue in the first instance. Here, in contrast, the EPA did decide that a transfer was appropriate and that it did not have the authority to consider the impact on endangered and threatened species of the transfer decision. We disagreed with both conclusions. Now, the EPA wants to decide the issue again, explaining its reasoning once more. INS v. Ventura, 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002), does not require that an agency have two chances to consider a factual or legal question before appellate review, only one. Further, the majority opinion ultimately does remand the transfer decision for consideration on proper legal grounds.

. Judge Kozinski also insists that the majority opinion "presume[s] that Congress repealed the CWA’s categorical mandate sub silentio, simply by passing the ESA.” Kozinski Dissent at 398 n. 2. As the opinion makes clear, we do not see the Endangered Species Act as repealing any part of the Clean Water Act. Rather, the Endangered Species Act, a later-enacted statute, adds one requirement to the list of considerations under the Clean Water Act permitting transfer provision. The repeal accusation places entirely too much weight on the word 'shall,” supposing that it shuts out any and all additional federal requirements concerning federal decision-making.
Moreover, if the precept disfavoring repeals by implication does apply, the very definite, unqualified language of the after-enacted Endangered Species Act must still prevail. See United Ass’n of Journeymen v. Reno, 73 F.3d 1134, 1140 (D.C.Cir.1996) (finding that a specific, detailed provision precludes operation of an earlier-enacted general statute that would otherwise apply); id. at 1142 (Edwards, J., dissenting) (noting that the specific provision did not mention the other provision or statute at issue in the case); see also Tenn. Valley Auth. v. Hill, 437 U.S. 153, 188, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978) (noting that Congress expressly limited the Endangered Species Act's "broad sweep” in certain, enumerated situations, and because of such express limitations "we must presume that these were the only 'hardship cases’ Congress intended to exempt”).

. It is worth noting also that, as Public Citizen recognized, NEPA requires an agency to provide an Environmental Impact Statement only "if it will be undertaking a ‘major Federal actio[n],' which 'significantly affect[s] the quality of the human environment.' ” Id. at 763, 124 S.Ct. 2204 (quoting 42 U.S.C. § 4332(2)(C)) (emphasis added). There is no requirement of a "major Federal actio[n]” in the Endangered Species Act; any “action authorized, funded, or carried out by the agency” will do. 16 U.S.C. § 1536(a)(2).

. 42 U.S.C. 4332(2)(C) reads;
[A]ll agencies of the Federal Government shall ... include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on — (i) the environmental impact of the proposed action, (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented, (iii) alternatives to the proposed action, (iv) the relationship between local short-term uses of man’s environment and the maintenance and enhancement of long-term productivity, and (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.