[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 2, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-10832
Non-Argument Calendar

_____

Agency No. A074-855-742

FENG CHAI YANG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 2, 2009)

Before TJOFLAT, EDMONDSON and PRYOR, Circuit Judges.

PER CURIAM:

In her third appearance before us, Feng Chai Yang, a native and citizen of China, petitions this Court to review the decision of the Board of Immigration Appeals that dismissed Yang's appeal of the denial of her applications for asylum and withholding of removal. Yang argued that her verbal and physical resistance to injections by Chinese officials and her removal of two intrauterine devices implanted by Chinese officials qualified as "other resistance to a coercive population control program." INA § 101(a)(42), 8 U.S.C. § 1101(a)(42). On our first review of the Board's decision, we remanded for the Board to address whether Yang's acts "could be construed as 'other resistance.'" Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1205 (11th Cir. 2005). On our second review, we remanded for the Board to reconcile inconsistent statements in its decision that followed our first remand. Yang v. U.S. Att'y Gen., No. 06-15843 (11th Cir. Apr. 11, 2007). The Attorney General argues that the record supports the decision of the Board that Yang was not persecuted on account of her resistance to a coercive population control program. We deny Yang's petition to review the denial of her applications for asylum and withholding of removal, but we remand the case for the Board to consider Yang's motion to reopen.

# I. BACKGROUND

Our discussion of the background is divided in two parts. We first revisit Yang's experiences in China and her flight to the United States. We next discuss the decision of the Board on the second remand.

*A. Yang's Experiences in China and Entrance to the United States*

Yang was born in Fuzhou City, China, and she later moved to the Fujian province and was married. Yang, 418 F.3d at 1200. After the birth of Yang's daughter in 1991, family planning officials allegedly forced Yang to have an intrauterine device inserted. Id. According to Yang, the device caused her discomfort and problems with her menstrual cycle, and she engaged a private doctor to remove the device. Id. Yang later discovered she was pregnant with a second child and hid in another province of China to conceal the pregnancy from family planning officials. Id. A month after Yang's husband left China because he was "fed up with the Chinese government," Yang gave birth to a son. Id. Yang testified that officials forced her to pay a fine for violating the population control program. Id.

In 1996, Yang was forced to undergo a procedure that she referred to as an "experimental medical sterilization." Id. Yang alleged that five or six people, including members of the police and family planning officials, came to her home and forced her to go to a hospital for the procedure. Id. Yang alleged that she

cried and shouted for the officials to release her as they forced her onto a hospital bed.  Id.  When the doctor began the procedure, Yang allegedly told the doctor that she was allergic to anesthesia and could not undergo the operation.  Id.  The doctor explained to Yang that the procedure required an injection and would not require anesthesia.  Id.

The next year, after several women allegedly became pregnant after they received the injection, officials returned to Yang's home and arrested her for a second injection.  Id.  Yang allegedly told the officials about her allergy to anesthesia and, when given a small dose, Yang broke out in burning bumps all over her body.  Id.  Yang alleged that she was forced to return to the hospital a month later to have a second intrauterine device inserted.  Id.  The second device also caused Yang discomfort.  Id.

In 1998, Yang left her two children with her mother in China.  Yang entered the United States illegally through Canada and reunited with her husband in New York, who was residing there illegally.  Id.  Yang then had the second intrauterine device removed.  Two years later, Yang became pregnant with a third child and gave birth in the United States.  Id.

*B. The Second Remand to the Board*

On the second remand, Yang argued that her struggle against the injections based on her allergy to anesthesia qualified as "other resistance to a coercive

population control program." Yang also argued that her resistance to the injections and removal of the intrauterine devices considered cumulatively established that her resistance was based on her opposition to a population control program. Yang moved the Board to remand her case to the immigration judge to accept further testimony about Yang's resistance and to consider whether Yang had a well-founded fear of future persecution based on recent country reports that established a change in country conditions. Yang attached to her brief the country reports for China for 2004 through 2007.

The Board denied Yang relief and ruled that Yang had failed to prove either that she resisted the population control program or that she was persecuted for resistance to that program. The Board applied the two-part standard from its decision in Matter of M-F-W- & L-G-, 24 I&N Dec. 633 (BIA 2008), that an alien must prove that she resisted or refused to adhere to birth control methods required by the government and the "claimed persecution [was] because of" that resistance. Id. at 637–38. The Board found that Yang had resisted the injections because of her allergy to anesthesia and Yang removed the first intrauterine device to end her discomfort and side effects caused by the device, not to oppose the population control program. The Board acknowledged that Yang's removal of the first intrauterine device while she was in China could be interpreted as "other resistance" to the population control program, but the Board ruled that Yang was

5

not persecuted for her removal of the device. Yang testified that she was fined for the birth of a second child, but the Board found that the fine did not amount to persecution. As to Yang's removal of the second intrauterine device after she entered the United States, the Board found that Yang failed to establish that she would be persecuted for that removal when she returned to China. The Board did not address Yang's motion to reopen.

## II. STANDARD OF REVIEW

We review the legal conclusion of the Board de novo. Al Najjar v. Ashcroft, 257 F.3d 1262, 1287 (11th Cir. 2001). We review the decision of the Board to determine whether it is "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Mohammed v. U.S. Att'y Gen., 547 F.3d 1340, 1344 (11th Cir. 2008) (quoting Al Najjar, 257 F.3d at 1284). To reverse those findings of fact, we must find that the record "'compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings.'" Id. (quoting Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## III. DISCUSSION

Yang presents two issues for our consideration. First, Yang challenges the denial of her application. Second, Yang argues the Board erred by failing to

6

address her motion to remand to the immigration judge. We address each argument in turn.

*A. Yang Failed To Establish That She Qualifies as a Refugee Under the "Other Resistance" Clause of Section 1101(a)(42).*

The Immigration and Nationality Act provides that an alien who has been forced to have an abortion, has been involuntarily sterilized, or has been persecuted for refusing those measures or for other resistance to a coercive population control program is entitled to asylum:

> For purposes of determinations under this Act, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42).

This Court has already decided, and Yang does not dispute, that she was not forcibly sterilized. Yang, 418 F.3d at 1202–03. The only question that remains is whether the Board erroneously ruled that Yang did not merit relief under the "other resistance" clause. 8 U.S.C. § 1101(a)(42). This question requires that we address whether Yang proved that she resisted the population control program and proved that she was or will be persecuted for her resistance. See Lin v. U.S. Attorney General, 555 F.3d 1310, 1316 (11th Cir. 2009); Yang v. U.S. Attorney General,

7

494 F.3d 1311, 1318–19 (11th Cir. 2007); <u>Huang v. U.S. Attorney General</u>, 429 F.3d 1002, 1004–06 (11th Cir. 2005).

Substantial evidence supports the finding by the Board that Yang was not persecuted for resistance to a coercive population control program. The record establishes that Yang resisted the injections, but not the population control program. Yang resisted the injections because of her allergy to anesthesia. Moreover, Yang presented no evidence that she was persecuted on account of her resistance. <u>See</u> <u>Yang</u>, 494 F.3d at 1318. Although Yang testified that officials twice forced her to have intrauterine devices implanted, she did not state that she resisted the procedures. The procedures also did not constitute persecution because they were intended to implement the population control program and not to punish Yang for any resistance to that program. <u>See</u> <u>Huang</u>, 429 F.3d at 1010. Even if we assume that Yang's removal of the first intrauterine device was an act of resistance, Yang was not persecuted for that act. <u>See</u> <u>Lin</u>, 555 F.3d at 1316; <u>Yang</u>, 418 F.3d at 1203. Yang was fined instead for the birth of a second child. After Yang's arrival in the United States, she removed the second intrauterine device, but she failed to offer any evidence that she will be persecuted for that act when she returns to China.

### B. Yang Is Entitled To A Decision About Her Motion To Remand.

An alien may move to reopen removal proceedings within 90 days after the final administrative decision. 8 C.F.R. § 1003.2(c)(2). The deadline does not

apply if the motion to reopen is based on changed circumstances in the country of the alien's nationality that were not known and could not have been presented at the removal hearing. 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3). If the alien moves to reopen while an appeal is pending before the Board, the motion "may be deemed a motion to remand for further proceedings before the Immigation Judge" and "may be consolidated with, and considered by the Board in connection with, the appeal to the Board." 8 C.F.R. § 1003.2(c)(4).

The decision whether to consider the motion to reopen in conjunction with an appeal rests with the Board. Yang moved the Board to remand so Yang could introduce evidence not previously presented, but the Board failed to mention Yang's motion when it dismissed Yang's appeal. Because the Board failed to decide whether it would be appropriate to reopen the case, we "remand to the [Board] for additional investigation or explanation." INS v. Orlando Ventura, 537 U.S. 12, 16, 123 S. Ct. 353, 355 (2002).

## IV. CONCLUSION

We **AFFIRM** the denial of Yang's petition, and we **REMAND** to the Board to consider Yang's motion to remand.

9