
**CORRECTED ON AUGUST 5, 2013+**
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| HARBHAJAN SINGH,<br><br>Petitioner,<br><br>v.<br><br>ERIC H. HOLDER, Jr., Attorney General,<br><br>Respondent. | No. 08-74143<br><br>Agency No. A076-858-631<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 20, 2013+
San Francisco, California

Before: WALLACE, NOONAN, and THOMAS, Circuit Judges.

Harbhajan Singh petitions for review of the Board of Immigration Appeals's

("BIA") decision affirming the order of the Immigration Judge ("IJ"), which found

Singh ineligible for asylum under the "serious nonpolitical crime" bar, 8 U.S.C. §§

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

1158(b)(2)(A)(iii) and 1231(b)(3)(B)(iii). Because the parties are familiar with the history of the case, we need not recount it here. We deny the petition.

I

We have jurisdiction to consider Singh's argument that the IJ and BIA acted beyond the scope of their remand from this Court, even though Singh did not raise that argument before the agency. While 8 U.S.C. § 1252(d)(1) required Singh to exhaust all administrative remedies available to him as of right, nothing in that provision removes our inherent power to enforce compliance with our lawful orders. *United States v. Yacoubian*, 24 F.3d 1, 5 (9th Cir. 1994).

The IJ and the BIA did not act beyond the scope of our remand order. In our previous disposition, we determined that the record did not support the agency's conclusion that Singh was ineligible for relief under the persecution-of-others bar, 8 U.S.C. §§ 1158(b)(2)(A)(i), 1231(b)(3)(B)(i). *Singh v. Gonzales*, 136 F. App'x 71, 72–73 (9th Cir. 2005) (unpublished). We then remanded to the BIA "for development of the record." *Id.* at 1093. In doing so, we did not expressly limit the scope of the remand to exclude consideration of the serious non-political crime bar, or any other bar to relief. *See United States v. Kellington*, 217 F.3d 1084, 1092 (9th Cir. 2000) ("[A]lthough lower courts are obliged to execute the terms of a mandate, they are free as to anything not foreclosed by the mandate . . . .")

(internal quotation marks omitted). Likewise, neither the disposition nor its procedural posture foreclosed consideration of additional bars to relief. *See id.* at 1093 ("[I]n construing a mandate, the lower court may consider the opinion the mandate purports to enforce as well as the procedural posture and substantive law from which it arises."). Rather, consistent with ordinary practice, we remanded for the agency to develop the record and decide in the first instance whether Singh was eligible for relief in the absence of the persecution-of-others bar. *See INS v. Ventura* 537 U.S. 12, 16 (2002) (per curiam) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."). The agency did just that, and concluded that Singh was ineligible for relief under a different statutory bar.

## II

Substantial evidence supports the conclusion of the IJ and the BIA that Singh is ineligible for asylum and withholding of removal under the serious nonpolitical crime bar, 8 U.S.C. §§ 1158(b)(2)(A)(iii), 1231(b)(3)(B)(iii).[1] Singh does not contest that he committed the offenses, nor that they constituted serious crimes. Therefore, the only issue is whether his serious crimes were nonpolitical.

---

[1] Because the BIA affirmed the IJ's decision and added its own reasoning, we review both decisions. *Kataria v. INS*, 232 F.3d 1107, 1112 (9th Cir. 2000).

The record does not compel reversal of the BIA's conclusion that Singh's supervision of the beating of eleven POWs during his service in the Indian Army had no political nature or objective. Singh testified that he and his soldiers were ordered to beat the Pakistani POWs until they lost consciousness. He admitted that the beatings were carried out because of anger and in retaliation for the POWs' suspected atrocities, not to achieve any strategic or tactical military objective. Indeed, there was no military objective by that point because the war was already over. Even if there had been some valuable information to be gained from questioning the POWs, Singh testified that the Pakistani soldiers were only asked why they had committed their suspected atrocities. Therefore, the record supports the conclusion that there was no "direct, causal link" between Singh's crime and any political purpose or objective. *See McMullen v. INS*, 788 F.2d 591, 595 (9th Cir. 1986) (defining "serious non-political crime" as a crime not committed out of "genuine political motives," not directed toward the "modification of the political organization" or "structure of the state", and in which there is no "direct, causal link between the crime committed and its alleged political purpose and object"), *overruled on other grounds by Barapind v. Enomoto*, 400 F.3d 744, 751 n.7 (9th Cir. 2005).

The record also does not compel reversal of the BIA's conclusion that Singh's participation in the capture and beating of thirty or forty random Bangladeshi civilians was disproportionate to the stated political objective. Singh testified that the purpose of capturing, interrogating, and beating the civilians was to obtain intelligence about Pakistan's border defenses. However, he did not explain whether alternative means of gathering that information were available, from the civilians or otherwise. Therefore, the record permitted the BIA to conclude that Singh's actions were disproportionate. This is especially so given that Singh's serious crime was the random targeting and beating of civilians. *See McMullen*, 788 F.2d at 598 (holding "random acts of violence" against "ordinary citizens" to be insufficiently linked to their political objectives and to be, "by virtue of their primary targets, so barbarous[,] atrocious[,] and disproportionate to their political objectives that they constitute 'serious nonpolitical crimes'").

Singh's argument that his crimes were political in nature because they occurred in the context of a military conflict is unavailing. We rejected a similar "all's fair in war" argument in *McMullen*. *See* 788 F.2d at 596–97.

III

Singh's argument that he is entitled to protection under the Convention

Against Torture ("CAT") is foreclosed by our previous decision. *Singh*, 136 F.

App'x at 73.

**PETITION DENIED.**