*780 O’BRIEN, J,
concurring in part and dissenting in part.
I concur in the denial of CAT protection. I agree with the majority that changed conditions in Senegal have made it safe for Thiam to relocate there. I disagree that it would be unreasonable to expect him to do so. Accordingly I dissent from the reversal and remand.
The immigration judge (IJ) concluded Thiam had not suffered past persecution. As an alternative holding the IJ concluded that even if Thiam had suffered past persecution it was safe and reasonable for him to relocate in Senegal.
As shown above the Court does not believe that the respondent has met his burden to show that whatever mistreatment he suffered was on account of his political opinion, either real or imputed. With reference to race the record does show that the respondent belongs to the Mandingo tribe which is a minority group in Senegal. The respondent has indicated that it would be difficult for him to relocate because of his race. The Department of State, however, paints a different picture. The Department of State’s Country Reports for Senegal most recently indicates that “the country’s many ethnic groups have coexisted relatively peacefully.” (Exhibit 4, page 368). The Court does not believe that the respondent has established that the rebels or the government would be interested in harming the respondent because of being a Mandingo.
The Court also believes that even if there had been past persecution shown on this record, the record also shows that internal relocation is a reasonable alternative for the respondent. The Court is aware that had there been a showing of past persecution that the Government would bear the burden to show that internal relocation is reasonable and that it is presumed that internal relocation is not reasonable. 8 C.F.R.1208.13(b)(3)(ii). Respondent’s expert felt it would be difficult to relocate to Dakar, which would be the most likely place the respondent would go. However, the expert did acknowledge that Mandingos do live in the north of Senegal and they live as migrants in Dakar. There would be some difficulty in the respondent relocating to a place where he does not have a job or any relatives to help him relocate. However, that level of difficulty is common in any sort of internal relocation and does not indicate that relocation would be “unreasonable.” Again the Department of State indicates that relocation would be a viable alternative for the respondent. “The Constitutional law provide for freedom of movement within the country ... and the Government generally respected these rights ... in practice.” (Exhibit 4, page 362). The Department of State also goes on to say that the government has established support for internally displaced persons from the Casamance conflict (Id.). Accordingly it does seem to this Court that internal relocation has been established as a reasonable alternative for the respondent. For that reason, then, the respondent would not be granted asylum.
IJ Decision at 10-11.
The BIA disagreed with the IJ in one respect; it concluded past persecution had been established. But it affirmed on the IJ’s alternative reasoning:
Nevertheless, the Immigration Judge properly denied the respondent asylum, concluding in the alternative that the Department of Homeland Security (“DHS”) met its burden to rebut the presumption of future persecution. We agree with the Immigration Judge’s de *781 termination that the DHS has met its burden of showing by a preponderance of the evidence that the respondent can reasonably relocate under all the circumstances to another area in Senegal other than Casamance in order to avoid future persecution by military forces or the MFDC (I.J. at 6, 10-11; Tr. at 82, 90). See 8 C.F.R. §§ 1208.13(b)(i), (3)(ii); see also INS v. Orlando Ventura, 537 U.S. 12, 18 [123 S.Ct. 353, 154 L.Ed.2d 272] (2002) (an individual who can relocate safely within his home country ordinarily cannot qualify for asylum).
The respondent was arrested by Senegalese security forces at a military checkpoint and mistreated by the military in 2005 after fighting between the government and the MFDC escalated in Casamance (I.J. at 9; Exhs. 2, 3d; Tr. at 32). The Immigration Judge relied on the 2009 Senegal Country Reports on Human Rights Practices — which noted, for example, that ethnic groups in Senegal have coexisted relatively peacefully, and that the government generally respected its citizens’ right for freedom of movement within the country (I.J. at 10-11; Exh. 4i). Members of the respondent’s ethnic group have lived in other areas of Senegal outside of Casamance (I.J. at 6,11; Tr. at 90).
The respondent asserts that relying on the wider Dakar community for support would result in his being identified as from the Casamance region by the MFDC, or being falsely accused as a rebel by the government. Yet the Immigration Judge correctly found that there has not been any direct attacks by the MFDC or the government in the capital city even though some people from Casamance already live there (I.J. at 6; Tr. at 90-91). Moreover, the Immigration Judge correctly observed that the Senegalese government has established support for internally displaced persons from the Casamance conflict (I.J. at 11; Exh. 4). Thus, there is no evidence other than the respondent’s speculation that he would be singled out for harm rising to the level of persecution if returned to Senegal.
BIA Decision at 2-3.
The majority writes: “Given our consideration of this evidence, we conclude that it substantially supports that Thiam could safely relocate to Dakar.” Maj. Op. at 778. Then it discusses the core of its decision: “But we are unable to conclude that the BIA’s determination that the government met its burden in establishing that Thiam could reasonably relocate is supported by substantial evidence.” Id. That is because the BIA did not adequately discuss the 8 C.F.R. § 1208.13(b)(3) factors. But the IJ clearly considered them, saying: “There would be some difficulty in the respondent relocating to a place where he does not have a job or any relatives to help him relocate. However, that level of difficulty is common in any sort of internal relocation and does not indicate that relocation would be ‘unreasonable.’ ” IJ Decision at 11. I take the IJ’s words to mean that moving to Dakar might be inconvenient, perhaps even difficult, but that does not make a move unreasonable. I heartily agree, particularly for one who is young and has experience living in difficult circumstances. At the time of the hearing, April 2010, Thiam was 32.[1] After some troubles with the MFDC in March 1998, Thiam, then 21, went with his family to Gabon where he remained until 2003. Surely a man in his early thirties, who had lived in a foreign country for several years, could make his way in the capital and largest city of his own country. According *782 to the IJ, the BIA and all members of this panel, the danger of persecution he had previously suffered had abated. Thiam may prefer to stay in this country, but he has no right to do so unless it would be dangerous and unreasonable for him to return to his own country. It is neither. The subtle, but critical, distinction between being justifiably unable to relocate and preferring not to relocate was appropriately drawn by the IJ and the BIA. For that reason I respectfully dissent from the reversal of the BIA’s decision.

. According to his affidavit Thiam was bom in 1977.