**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MIHRAN NERSISYAN,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

No. 14-71828

Agency No. A088-548-980

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted November 17, 2020[**]
Pasadena, California

Before: TASHIMA, W. FLETCHER, and BERZON, Circuit Judges.

Mihran Nersisyan is a native and citizen of Armenia. Nersisyan appeals

from a Board of Immigration (BIA) decision rejecting his asylum, withholding of

removal, and Convention Against Torture (CAT) claims. He does not challenge

the CAT finding, but argues the BIA erred by overlooking this circuit's

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

whistleblower precedent in connection with his asylum and withholding claims. We have jurisdiction under 8 U.S.C. § 1252(a). We grant his petition and remand to the BIA.

Although he did not make the precise argument to the BIA that he raises here, Nersisyan argued facts sufficient to put the BIA on notice of his whistleblower claim. *See Diaz-Jimenez v. Sessions*, 902 F.3d 955, 959–60 (9th Cir. 2018). The BIA nonetheless failed to apply this circuit's precedent recognizing perceived whistleblowing as a form of imputed political opinion. *See Khudaverdyan v. Holder*, 778 F.3d 1101, 1106 (9th Cir. 2015); *see also Grava v. INS*, 205 F.3d 1177, 1181 (9th Cir. 2000). The BIA's analysis, which concluded that Nersisyan was not persecuted on account of actual or imputed political opinion, was therefore incomplete and not supported by substantial evidence. *See Khudaverdyan*, 778 F.3d at 1106.

Taking Nersisyan's testimony as true, he has shown that he was targeted as a perceived whistleblower. *See Singh v. Barr*, 935 F.3d 822, 824–26 (9th Cir. 2019). First, his job as an assistant to the deputy director of the Yerevan Center of Human Rights Protection involved elevating complaints of political figures' corruption and could have been perceived as whistleblowing activity. Second, his attackers appear to have been motivated by his perceived whistleblowing. The same day Nersisyan

referred to his supervisor a complaint of an unlawful eviction, he was attacked by three men he recognized as Gagik Tsarukyan's bodyguards. Tsarukyan was both the head of the Prosperous Armenia political party, and the person Nersisyan believed was responsible for the eviction. During the attack, the bodyguards warned Nersisyan he was "playing with [] fire." More than two years later, after fleeing and returning to Armenia, Nersisyan was arrested by the police. They kicked him in the face and "told [him] that Tsarukyan doesn't like whoever betrayed him." Finally, the country report in the record indicates government corruption is pervasive in Armenia, and the corrupt elements Nersisyan encountered—the bodyguards and police—were directly associated with the head of the Prosperous Armenia political party. Taken as true, Nersisyan's testimony satisfies *Singh*'s three-prong test. *See id.*

However, because the BIA expressly determined it did not need to reach the immigration judge's alternative holding that Nersisyan was not credible, we must remand for additional consideration. *See INS v. Ventura*, 537 U.S. 12, 16 (2002). Accordingly, we remand to the BIA to determine (1) whether Nersisyan's testimony was credible; and if so, (2) whether his mistreatment rose to the level of persecution.

**GRANTED and REMANDED.**

3