NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| YUNXIA ZHOU, | No. 15-73309 |
| Petitioner, | Agency No. A089-722-973 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 17, 2022
Las Vegas, Nevada

Before: D.M. FISHER,** BENNETT, and KOH, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge BENNETT.

Yunxia Zhou, a native and citizen of China, seeks review of the Board of

Immigration Appeals' (BIA) order affirming the denial of her application for

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable D. Michael Fisher, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

asylum, and protection under the Convention Against Torture (CAT).[1] Zhou contends that she fears police retribution if she returns to China because of her previous protest of the country's coercive family planning practices. The immigration judge (IJ) found Zhou not credible, and the BIA upheld that adverse credibility determination. We have jurisdiction under 8 U.S.C. § 1252(a). We grant the petition and remand for further proceedings.

The IJ cited six grounds for determining that Zhou was not credible. Of those six grounds, the BIA relied on three in affirming the IJ's credibility determination—two internal inconsistencies and one omission of corroborating evidence. We conclude that only one of the inconsistencies is supported by substantial evidence and that the corroborating evidence should not have been evaluated as part of the initial credibility determination.

The IJ and BIA found Zhou's testimony that she went to the Chinese consulate in Chicago in 2009 to get a new passport "undercut[] her claim of a fear of persecution upon her return to China." Substantial evidence supports this conclusion. Zhou explained that she visited the consulate because she needed identification to get a job and support her daughter. Although this explanation is plausible, Zhou testified in 2012 that she had not worked. Zhou also argues that the

---

[1] Zhou applied for withholding of removal but waives her appeal on the denial of that application.

Chinese government was already aware of her travel to the United States. But the record does not contain any evidence that the Chinese government was aware Zhou was still in the United States past the expiration of her visa. The IJ and BIA were, thus, well within the bounds of reason to conclude Zhou's desire for a job could not reasonably outweigh her fear of returning to a persecuting country.

Substantial evidence, however, does not support the IJ and BIA's conclusion that Zhou's willingness to return to China after several trips outside the country in 2002 after her alleged forced abortion "undermines the credibility" of her asylum claim. The BIA focuses on Zhou's willingness to return to China after having already suffered a forced abortion, but Zhou repeatedly stated that her arrest and beating were her breaking point. First, Zhou testified that she did not consider leaving China until she was arrested and beaten in 2007 for protesting China's coercive family planning practices. Her protest occurred shortly after discovering, in 2007, that officials had secretly inserted contraception in her body. Second, Zhou's asylum application is consistent with her testimony that her arrest and beating prompted her exit from China.

Finally, the IJ and BIA should not have relied on Zhou's failure to present her daughter as a witness as part of the initial credibility determination. An asylum applicant may establish eligibility on her credible testimony alone, without other evidentiary corroboration. 8 U.S.C. § 1158(b)(1)(B)(ii). Under the REAL ID Act,

3

an IJ determines a petitioner's credibility by "[c]onsidering the totality of the circumstances, and all relevant factors." *Id.* § 1158(b)(1)(B)(iii).[2] If the IJ determines the applicant is "otherwise credible," the Court may still require the applicant to provide corroborating evidence to sustain her burden. *Id.* § 1158(b)(1)(B)(ii). But the IJ cannot use the lack of corroborating evidence initially as a ground for saying the applicant is not credible. *See Ren v. Holder*, 648 F.3d 1079, 1093 (9th Cir. 2011) ("[T]he IJ must determine whether an applicant's credible testimony *alone* meets the applicant's burden of proof. If it does, no corroborative evidence is necessary. If a credible applicant has not yet met his burden of proof, then the IJ may require corroborative evidence.") (emphasis added).

We set aside the adverse credibility finding. This Court has recently explained that adverse credibility determinations "must be reviewed[] based on the 'totality of the circumstances and all relevant factors,' not a single factor." *Alam v. Garland*, 11 F.4th 1133, 1135 (9th Cir. 2021) (en banc) (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). We therefore remand the asylum claim to the BIA for reconsideration in light of this standard. *See id.* at 1135 ("[T]he totality of the circumstances[] and all relevant factors." (emphasis omitted)). As part of any

---

[2] The relevant factors include the applicant's demeanor, candor, responsiveness, plausibility of her account, consistency within statements and between statements, and inaccuracies or falsehoods. 8 U.S.C. § 1158(b)(1)(B)(iii).

credibility determination on remand, the BIA should address Zhou's explanation for returning to China in 2002 after her trips abroad—namely, that she did not consider leaving the country until after her arrest and beating in 2007.[3]

If the BIA is not satisfied that Zhou has sustained her burden of proof based on her credible testimony alone, it may then require Zhou to provide corroborating evidence. But it first must give her notice and the opportunity to provide that evidence. *Ren v. Holder*, 648 F.3d 1079, 1090 (9th Cir. 2011). If Zhou still fails to produce "non-duplicative, material, easily available corroborating evidence and provides no credible explanation for such failure," the BIA may then consider that in a renewed credibility determination. *Sidhu v. I.N.S.*, 220 F.3d 1085, 1092 (9th Cir. 2000).[4]

---

[3] We note that for an asylum applicant to sustain her burden through uncorroborated testimony, the testimony not only must be credible but must also be persuasive and refer to facts sufficient to demonstrate refugee status. 8 U.S.C. § 1158(b)(1)(B)(ii); *Aden v. Holder*, 589 F.3d 1040, 1044 (9th Cir. 2009). Here, the BIA only addressed Zhou's credibility. However, on remand, the agency could avoid a credibility determination if it finds that Zhou's testimony is not persuasive or not does not refer to facts sufficient to demonstrate that she is a refugee.

[4] The dissent criticizes the majority for intruding upon the agency's domain by "barring the agency from considering a relevant factor." Not so. We are bound by *Ren*'s clear holding that "[t]he IJ must determine whether an applicant's credible testimony alone meets the applicant's burden of proof." *Ren*, 648 F.3d at 1093. The BIA is welcome to request corroborating evidence, give the applicant the notice and opportunity to present that evidence, and draw conclusions from the applicant's presentation or omission of that evidence. But such a step is only necessary if, as the text of the statute dictates, the applicant's credible testimony alone is not enough.

Because the credibility determination also infected the BIA's CAT analysis, the BIA must reevaluate that claim on remand.

**PETITION FOR REVIEW GRANTED; REMANDED.**

*Yunxia Zhou v. Merrick B. Garland*, No. 15-73309

BENNETT, Circuit Judge, concurring in part and dissenting in part:

The agency originally could have relied on Zhou's failure to provide corroborating evidence as an adverse credibility ground, had it provided her notice and the opportunity to respond. It should be able to do that on remand, as such a failure could be relevant to the agency's credibility determination. Because the majority erroneously predetermines the issue, and bars the agency from exercising its right under the REAL ID Act to base its credibility determine on *any* relevant factor, I respectfully dissent from that portion of the majority disposition.

In *Sidhu v. INS*, 220 F.3d 1085 (9th Cir. 2000), we held that the agency may consider lack of corroboration as an adverse credibility ground so long as these requirements are met: (1) "[t]he petitioner must be given an opportunity at his IJ hearing to explain his failure to produce material corroborating evidence"; (2) "the corroborating evidence must be both material to the petitioner's asylum claim and non-duplicative of other corroboration"; and (3) "the evidence must be easily available." *Id.* at 1091. Thus, under *Sidhu*, the failure to provide corroborating evidence can be used as an adverse credibility factor.

Further, under the REAL ID Act, the agency may base a credibility determination on *any* "relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii). As we recognized in *Sidhu*, the failure to provide easily available corroborating evidence

1

can detract from a petitioner's credibility. 220 F.3d at 1091 ("The IJ and BIA might well have inferred that Petitioner knew that his father could not corroborate Petitioner's testimony, and chose not to call him as a witness for that reason. Such an inference would not have been unreasonable."). So the failure to provide corroborating evidence can be a "relevant factor," which the agency has the absolute right to consider under the REAL ID Act in assessing credibility (provided it complies with *Sidhu*).

I disagree with the majority that *Ren v. Holder*, 648 F.3d 1079 (9th Cir. 2011), compels a contrary result. I see nothing in *Ren* suggesting that the agency is barred from considering lack of corroboration as an adverse credibility ground under the REAL ID Act, provided it satisfies the requirements in *Sidhu*. Indeed, *Ren* does not address whether the agency may use lack of corroboration in its initial credibility determination because, there, we explained that the agency only relied on inconsistencies and implausibilities as the basis for its adverse credibility determination. *Id.* at 1083, 1085.

But the majority's disposition suffers from a more fundamental problem—it "intrude[s] upon the domain which Congress has exclusively entrusted to an administrative agency." *INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943)). Congress entrusted to the agency the authority to make adverse credibility determinations, and in doing

2

so, it expressly gave the agency the right to consider any relevant factor.  8 U.S.C. § 1158(b)(1)(B)(iii).  By barring the agency from considering a relevant factor, the majority has intruded on the agency's statutory authority.

For these reasons, I respectfully dissent, in part.