**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-2723

PETER IGWE-STEVENS,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A070-841-611)
Immigration Judge: Honorable Mirlande Tadal

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 7, 2010

Before: BARRY, STAPLETON and NYGAARD, <u>Circuit Judges</u>.

(Opinion Filed: April 7, 2010)

OPINION

PER CURIAM

Peter Igwe-Stevens petitions for review of the Board of Immigration Appeals'

("BIA") final order of removal.  For the reasons that follow, we will grant the petition and

remand for further proceedings.

I.

Igwe-Stevens is a citizen of Nigeria. He arrived in the United States in 1990 on a visitor's visa and overstayed. In 1999, the then-Immigration and Naturalization Services charged him as removable on that basis, and he concedes removability. In 2006, however, he applied for statutory withholding of removal and relief under the Convention Against Torture ("CAT") because he claims to have suffered persecution and torture in Nigeria in the past and to face persecution and torture if returned.[1]

Igwe-Stevens is an ethnic member of the Ibo tribe (sometimes spelled "Igbo," see Chukwu v. Att'y Gen., 484 F.3d 185, 187 (3d Cir. 2007)). Before the Immigration Judge ("IJ"), he testified that his father was a member of a political organization called the Ohaneze, which sought better treatment for ethnic Ibos in Nigeria.[2] In 1987, the Nigerian government assassinated his father because of his activities with the Ohaneze. Angered by the assassination, Igwe-Stevens and his remaining family members joined the Ohaneze themselves shortly thereafter. Igwe-Stevens eventually became the Secretary of the student and youth wing of the organization, also referred to as the Movement for the Actualization of the Sovereign State of Biafra ("MASSOB"), at his school in Enugu, Nigeria. In that role, he organized meetings with national leaders, gave press briefings,

---

[1]Igwe-Stevens did not seek asylum, apparently because he did not file his application within one year of entering the United States. See 8 U.S.C. § 1158(a)(2)(B).

[2]Neither the BIA nor the IJ found that Igwe-Stevens's testimony was not credible, so we assume that it was. See Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009).

2

and helped coordinate demonstrations.  In particular, he was involved in a September 1989 demonstration that lasted two days.  The army eventually dispelled the demonstration and arrested Igwe-Stevens and his associates.  The army detained him for approximately one week, interrogating him about the organization and, in the process, stripping him of clothes, beating him with gun barrels and batons, kicking him, spitting on him, and depriving him of sleep.  The army then took him to an army barracks and detained him for another three months.  He described the treatment there as less brutal, though he was again stripped of his clothes, beaten, and deprived of sleep.  The army eventually released him, an event he attributes to the intervention of military friends of his father.

Igwe-Stevens continued working for the Ohaneze until August of 1990, when his brother-in-law too was assassinated.  Igwe-Stevens believes that the Nigerian government assassinated his brother-in-law for his involvement with the Ohaneze as well, and that assassination led him finally to leave Nigeria and come to the United States.  Since his arrival in the United States, Igwe-Stevens has remained active in the Ibo cause, joining the World Igbo Congress and remaining a member of the Ohaneze/MASSOB.  In addition to his testimony, Igwe-Stevens presented:  (1) the testimony and affidavit of his sister; (2) an affidavit from a childhood friend, Benson Ebutu; (3) a letter purporting to be from the Secretary of the World Igbo Conference; and (4) multiple country reports and news articles documenting the Nigerian government's banning of MASSOB in 2001 and demonstrations and arrests involving MASSOB members in 2005 and 2006.  Igwe-

3

Stevens claims that the Nigerian government continues to persecute and torture members of MASSOB, and he fears the same treatment if he is returned.

The IJ denied Igwe-Stevens's claims on the sole basis that he failed to corroborate them, noting several areas in which she believed that corroboration was necessary. The BIA upheld the ruling after conducting its own corroboration analysis. Igwe-Stevens petitions for review.[3]

II.

Igwe-Stevens bore the burden of showing it more likely than not that he will be persecuted (for his withholding of removal claim) or tortured (for his CAT claim) if returned to Nigeria. See Chukwu, 484 F.3d at 188-89. For withholding purposes, a showing of past persecution gives rise to a rebuttable presumption of persecution in the future. See 8 C.F.R. § 1208.16(b)(1). Applicants may sometimes carry their burden of proof with credible testimony alone, but the BIA may insist on corroboration of facts that are "central to the applicant's claim and easily subject to verification." See Chukwu, 484

---

[3]The BIA originally issued its order on November 18, 2008, but later reissued it on May 15, 2009, to allow Igwe-Stevens to file a timely petition for review. We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). We review only the BIA's order, and not the IJ's, because the BIA conducted its own corroboration analysis. See Voci v. Gonzales, 409 F.3d 607, 612-13 (3d Cir. 2005). We review factual findings for substantial evidence, and review legal conclusions de novo subject to established principles of deference on agency review. See Hua Wu v. Att'y Gen., 571 F.3d 314, 317 (3d Cir. 2009). Under the REAL ID Act, we may not reverse a finding that corroborating evidence is available unless "a reasonable trier of fact is compelled to conclude that corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4). As explained below, however, there are no such findings in this case to review.

4

F.3d at 192.  In such cases, "the failure to produce corroborating evidence may undermine an applicant's case where (1) the IJ identifies facts for which it is reasonable to expect the applicant to produce corroboration, (2) the applicant fails to corroborate, and (3) the applicant fails to adequately explain that failure."  Id. at 191-92.  "Where the . . . BIA fails to engage in an inquiry and analysis establishing each of the[se] steps . . ., we have vacated and remanded, holding that only upon such inquiry and analysis can the BIA hold the lack of corroboration against an applicant."  Id. at 192.

Igwe-Stevens argues that the BIA failed to apply this framework in this case.  We agree.  The BIA faulted Igwe-Stevens for failing to produce evidence corroborating (1) his position as Secretary of the student wing of Ohaneze/MASSOB in Nigeria, (2) his continued membership in that group, (3) the 1989 demonstration that resulted in his arrest, and (4) medical treatment for injuries sustained as a result of his beatings.  Igwe-Stevens correctly argued before the BIA that the IJ did not provide him with an opportunity to explain the lack of corroboration on these points, but the BIA did not address that issue.  Remand would be required for that reason alone.  See id. at 192.[4]

The BIA's corroboration analysis, however, suffered from other deficiencies as well.  First, it is true that Igwe-Stevens presented no evidence corroborating his testimony

_____

[4]Igwe-Stevens offered explanations for the unavailability of certain evidence in his brief before the BIA and has done the same in his brief in this Court.  The BIA did not address those explanations, and we may not do so in the first instance.  See INS v. Ventura, 537 U.S. 12, 16-17 (2002).  We express no opinion on whether the BIA itself may consider Igwe-Stevens's explanations or must remand for the IJ to do so.

5

that he was the Secretary of the Ohaneze/MASSOB student wing at his school. The BIA, however, did not explain why it believed that it was reasonable for Igwe-Stevens to produce such evidence or make any finding regarding whether such corroborating evidence actually exists or is available to Igwe-Stevens. See id. at 192.

Second, the same applies to the BIA's conclusion that Igwe-Stevens failed to adequately corroborate his involvement with the Ohaneze/MASSOB in the United States. Igwe-Steven did provide certain corroborating evidence on that issue, which the BIA found insufficient. We perceive no error in the BIA's assessment of that evidence and cannot say that the BIA was required to accept it. The BIA, however, should have explained why it expected additional corroboration on this point and should have given Igwe-Stevens an opportunity to explain why he did not provide it. See id. at 191-92.

Third, the BIA faulted Igwe-Stevens for failing to produce any evidence of the 1989 demonstration that led to his arrest. The BIA, however, did not acknowledge an affidavit from Igwe-Stevens's childhood friend, Benson Ebutu, who stated that he attended school in 1989 with Igwe-Stevens and participated in that demonstration. (A.R. 276.) The BIA should have explained why it found that affidavit inadequate. See Chukwu, 484 F.3d at 189. Moreover, although the BIA explained that it was reasonable to expect corroboration because Igwe-Stevens testified that the demonstration was widely reported in the press, it did not explain why it believed that Nigerian press accounts are available to Igwe-Stevens now and did not give him an opportunity to offer an explanation on that point. See id. at 191-92.

6

Finally, the BIA faulted Igwe-Stevens for presenting no medical evidence of treatment for injuries sustained during his beatings. Igwe-Stevens, however, "did not testify that he ever received medical treatment for his injuries[.]" Id. at 192. "Therefore, the record itself indicates that medical records documenting [his] injuries probably do not exist." Id. In any event, the BIA should have conducted a more thorough corroboration analysis on this point in light of the principles discussed above.

Accordingly, we will grant Igwe-Stevens's petition for review and "remand for a new corroboration determination, giving [him] an opportunity to explain why he has not produced the documents the [BIA] considered important," or for proceedings otherwise consistent with this opinion. Id. at 193.[5]

---

[5]In addition to challenging the BIA's corroboration analysis, Igwe-Stevens argues that the BIA erred in concluding that he failed to demonstrate past persecution because (1) his credible testimony alone should have been sufficient to support such a finding, and (2) the BIA failed to provide a reasoned decision on that issue. It is clear from the BIA's decision, however, that it rejected Igwe-Stevens's claim of past persecution for lack of corroboration. Because the BIA's corroboration analysis was flawed for the reasons explained above, we cannot and do not determine on the existing record whether it erred in requiring corroboration per se.