[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-12036
Non-Argument Calendar

_____

Agency No. A201-098-241

JACQUES PERRIN DORANTE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(January 21, 2015)

Before TJOFLAT, MARCUS and JULIE CARNES, Circuit Judges.

PER CURIAM:

Jacques Perrin Dorante seeks review of the Board of Immigration Appeals's

("BIA") final order affirming the Immigration Judge's ("IJ") denial of his

application for asylum under the Immigration and Nationality Act ("INA"), 8

U.S.C. § 1158(a), and withholding of removal under 8 U.S.C. § 1231(b)(3).  On appeal, Dorante argues that the BIA and IJ erred in finding that he did not establish past persecution.  After thorough review, we grant the petition.

We review only the decision of the BIA, except to the extent that the BIA expressly adopts the IJ's decision.  Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).  Where the BIA agrees with the IJ's reasoning, we will also review the IJ's decision to that extent.  Id.  Here, the BIA did not expressly adopt the IJ's decision but agreed with the IJ's findings regarding past persecution, well-founded fear of future persecution, and withholding of removal.  Thus, we review both decisions to that extent.  See id.

We review our own subject matter jurisdiction de novo.  Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006).  In a petition for review of a BIA decision, we review factual determinations under the substantial evidence test.  Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350 (11th Cir. 2009).  Under the substantial evidence test, we draw every reasonable inference from the evidence in favor of the agency's decision, and reverse a finding of fact only if the record compels a reversal.  Id. at 1351.  We must affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Id.  The fact that the record may support a contrary conclusion is insufficient to reverse.  Adefemi v. Ashcroft, 386 F.3d 1022, 1027

2

(11th Cir. 2004) (en banc).  Additionally, where the BIA fails to consider an issue, we cannot conduct our own review of the issue but must remand to give the agency the opportunity to address the matter in the first instance in light of its own expertise.  INS v. Ventura, 537 U.S. 12, 16-17 (2002).

An applicant for asylum must meet the INA's definition of a refugee.  8 U.S.C. § 1158(b)(1).  The INA defines a refugee as a person who cannot return to his home country due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A).  To establish eligibility for asylum, an applicant must demonstrate either past persecution, or a well-founded fear of future persecution, based on a statutorily listed factor.  Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006).  If the applicant demonstrates past persecution, there is a rebuttable presumption that he has a well-founded fear of future persecution.  Id.  This presumption may be rebutted if the government shows, by a preponderance of the evidence, that conditions in the country have changed or that the applicant could avoid future persecution by relocating to another part of the country if, "under all the circumstances, it would be reasonable to expect the applicant to do so."  8 C.F.R. § 208.13(b)(1)(i).

If the applicant cannot demonstrate past persecution, he must establish a well-founded fear of future persecution that is subjectively genuine and objectively

reasonable.  Ruiz, 440 F.3d at 1257.  "An applicant does not have a well-founded fear of persecution if the applicant could avoid future persecution by relocating to another part of the applicant's country of nationality . . . if under all the circumstances it would be reasonable to expect the applicant to do so."  8 C.F.R. § 208.13(b)(2)(ii).  Thus, if the applicant cannot demonstrate past persecution, then he, rather than the government, bears the burden of establishing that it would not be reasonable to relocate, unless the persecution he fears is governmental or government-sponsored.  Id. § 208.13(b)(3)(i).

We have held that "[p]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution."  Kazemzadeh, 577 F.3d at 1353 (quotations omitted).  In determining whether the petitioner has suffered persecution, we evaluate the cumulative harm suffered by the petitioner.  Shi v. U.S. Att'y Gen., 707 F.3d 1231, 1235 (11th Cir. 2013).  Such a determination is a highly fact-intensive inquiry that requires consideration of the totality of the circumstances on a case-by-case basis.  Id. at 1235-36.  We have previously concluded that circumstances involving only minimal violence do not compel a finding of persecution.  See Kazemzadeh, 577 F.3d at 1353 (upholding the BIA's determination of no past persecution where the petitioner was "arrested while participating in a student demonstration, interrogated and beaten for five hours, and

4

detained for four days, but . . . did not prove that he suffered any physical harm"); Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1171, 1174 (11th Cir. 2008) (upholding the BIA's determination of no past persecution where the petitioner had been detained for 36 hours, sustained a "minor beating" by police officers, and suffered only "scratches and bruises").

Nevertheless, we have also rejected a rigid requirement of physical injury, and have made clear that "attempted murder is persecution, regardless of whether the petitioner was injured." De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1008 (11th Cir. 2008) (quoting Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1233 (11th Cir. 2007)). In Sanchez Jimenez, we held that repeated death threats accompanied by the attempted kidnapping of the petitioner's daughter and the attempted murder of the petitioner, whose moving vehicle was shot at multiple times but who was not struck by the bullets or physically injured, constituted persecution. Id. at 1233-34. Additionally, we've held that the totality of verbal death threats and attempted attacks over an 18-month period, culminating in a roadside assault at gunpoint, during which persecutors threw the petitioner to the ground and hit him in the face with the butt of a rifle, resulting in a broken nose, amounted to persecution. Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1257-58 (11th Cir. 2007). Thus, past persecution may be found absent a serious physical injury where the applicant demonstrates repeated threats combined with other forms of

severe mistreatment, such as kidnapping or attempted murder. De Santamaria, 525 F.3d at 1009 (finding past persecution where the applicant suffered "repeated death threats, two physical attacks [which resulted in minor physical injuries], the murder of a family friend, and a kidnaping cut short only by a harrowing escape"). Furthermore, we "may consider a threatening act against another as evidence that the petitioner suffered persecution where that act concomitantly threatens the petitioner." Id. at 1009 n.7.

Finally, an alien seeking withholding of removal similarly must show that his "life or freedom would be threatened in [his] country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The burden of proof for withholding of removal, however, is "more likely than not," and, thus, is "more stringent" than the well-founded fear standard for asylum relief. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005). Accordingly, where a petitioner fails to establish a claim of asylum on the merits, often he necessarily fails to establish any claims for withholding of removal. See Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1292 (11th Cir. 2006).

As an initial matter, the only issue we have jurisdiction to review is Dorante's challenge to the finding that he did not establish past persecution. As we've said, if a petitioner has failed to exhaust his administrative remedies by not

raising a claim before the BIA, we lack jurisdiction to consider the claim, even if the BIA sua sponte considered the claim. Amaya-Artunduaga, 463 F.3d at 1250-51. Further, when an appellant fails to offer argument on an issue on appeal, that issue is deemed abandoned. Sepulveda, 401 F.3d at 1228 n.2. In this case, Dorante did not argue before the BIA, and does not argue on appeal, that he established a well-founded fear of future persecution independently of the presumption created by past persecution. Thus, he has abandoned that issue and, even if he had not, he has failed to exhaust it.

Nevertheless, in our view, the BIA and IJ's finding that Dorante did not suffer mistreatment that rose to the level of persecution is not supported by substantial evidence in the record. Dorante testified that, in 2008, he joined an organization in his hometown of Saint Louis du Sud ("Saint Louis"), called the "MPC," which translated into the Movement for Change. At the time, the organization had 13 members, including President Claudy Morose, and worked to clean the streets, address irrigation and literacy problems, and teach civil rights and civic engagement to local citizens. The people they taught began to tell MPC members about the problems they were having with local politicians, which prompted the MPC to create a weekly radio program as an outlet for local residents to discuss their problems on the air. After the program's creation, Morose received a phone call from someone stating that if he did not stop the radio program, there

would be "problems." Morose was then threatened by Andre Masner, an influential member of the Lavalas party and a security guard for Representative Jean Candio, who had himself been arrested for human rights violations he committed in Haiti. Masner told Morose that he would make Morose "pay for his mouth." On June 10, 2010, Masner and his crew entered Morose's home and beat Morose to death in front of his family.

In July 2010, a month after Morose had been beaten to death by Masner's men in his own home, Masner and his men forced their way into Dorante's home and began beating him, until they were interrupted by a group of people passing by who responded to his wife's calls for help. Following the beating, Dorante received a number of threatening phone calls from Masner and his men. After Dorante fled his hometown, his wife was beaten by Masner and his men in December 2010 in order to ascertain Dorante's whereabouts, after which Dorante had to relocate and his wife had to leave her home. Then, in August 2013, upon his wife's brief return to their hometown for a funeral, after an absence of more than two years, their home was burned down under unknown circumstances, though Dorante claims Masner is responsible. While none of these discrete instances of mistreatment, when considered alone, would meet the threshold for persecution, the determination is whether the mistreatment cumulatively amounts to persecution. See Shi, 707 F.3d at 1235. We conclude that Dorante's beating,

8

combined with Masner's repeatedly threatening him, then beating his wife to try to find him, and then possibly burning down his home once someone returned to it, compel a finding that Dorante suffered persecution. See De Santamaria, 525 F.3d at 1009; Mejia, 498 F.3d at 1257-58.

In finding that Dorante did not suffer past persecution, the BIA and IJ implied that they relied, in part, on the fact that Dorante did not sustain serious physical harm as a result of his mistreatment by Masner and his men. However, we have explicitly rejected the notion that a physical injury is required to find past persecution. De Santamaria, 525 F.3d at 1008. Moreover, the fact that Dorante did not suffer serious physical harm during his beating is not because his attackers voluntarily retreated but rather because they were interrupted. Given that these same attackers recently had beaten Morose to death in his home, it appears that this interrupted beating of Dorante in his home rises to the level of attempted murder, which we've held constitutes persecution. See Sanchez Jimenez, 492 F.3d at 1233.

Notably, however, our conclusion rests on Dorante's credibility, and the BIA declined to reach the IJ's alternative finding that Dorante was not credible. Thus, because the record compels a finding that Dorante suffered past persecution if his

testimony is credible, we remand for the BIA to consider Dorante's challenge to the IJ's adverse credibility finding.[1]

**PETITION GRANTED.**

---

[1] Finally, Dorante briefly argues on appeal that the BIA and IJ erred in finding that he did not meet his burden of showing that could not relocate safely within Haiti. But he failed to exhaust this issue because he did not raise before the BIA any challenge to the IJ's finding that he failed to show he could not relocate. Nevertheless, if Dorante prevails on his past persecution claim on remand, the burden would switch to the government to show that Dorante could safely and reasonably relocate to another part of Haiti. See 8 C.F.R. § 208.13(b)(1)(i). Importantly, no agency has made no finding on whether the government has met its burden on relocation. Thus, if the BIA reverses the IJ's credibility finding on remand, it would likely need to remand for the IJ to make a new relocation finding in light of the new burden of proof.